## 57831. THORNTON & COMPANY, INC. v. GWINNETT BANK & TRUST COMPANY et al.

Carley, Judge.

Appellant-Thornton & Company (Thornton) appeals from the grant of summary judgment to appellee-Gwinnett Bank & Trust Company (Bank) in this commercial paper case. Alwyn T. Wyche was an officer and agent and Elizabeth Ann Monty was a clerical employee of Thornton, an insurance agency. Both had formerly held similar positions with Sears, Wyche & Company, also an insurance agency, of which Wyche was the major stockholder and principal officer. As Thornton's agent, Wyche was authorized to accept, receive and receipt for premiums on insurance tendered by him to, and accepted by, Thornton. Construing the evidence most favorably for Thornton, it appears that Wyche

fraudulently and without Thornton's knowledge or consent processed certain insurance premium finance applications through AFCO, a company in the business of advancing funds for insurance premiums. As the result of these applications, AFCO issued a draft in the amount of $25,042, drawn on Manufacturers Hanover Trust Company and payable to Thornton. Wyche or Monty, acting in concert with Wyche, without the knowledge, consent or authorization of Thornton, indorsed the draft in Thornton's name and made it payable to the order of Wyche, Sears & Company. The draft, bearing the forged indorsement, was presented by Wyche to the Bank, which honored it and credited the account of Wyche, Sears & Company with the amount represented thereby. Thornton subsequently discovered the fraud of its agent, Wyche, and discharged him. Although Wyche has apparently repaid to AFCO a substantial portion of the amount defrauded (the balance being repaid to AFCO by Thornton, the principal), Thornton brought suit to recover the full amount of the draft from the Bank pursuant to Code Ann. § 109A-3—419 (1) (c) and (2), on the grounds of conversion. Thornton alleged that the instrument was converted when it was paid to Wyche over the forged indorsements. The Bank responded, denying liability to Thornton for paying out over the forged indorsement. After discovery, the Bank moved for and was granted summary judgment.

1. The Bank claims that the indorsement on the draft was "effective" under the "impostor rule" of Code Ann. § 109A-3—405 in that Wyche induced AFCO, the drawer, to issue the instrument in Thornton's name. We disagree. Assuming without deciding that this Code section would provide a defense to a bank against whom a conversion action is brought, it is clear that " '[i]mpostor' refers to impersonation and does not extend to a false representation that the party is the authorized agent of the payee . . . Thus it appears that [Code Ann. § 109A-3—405 (1) (a)] does not cover one who [like Wyche] represents himself as an agent of [a principal] and procures a check payable to the order of [the principal]." White & Summers, Uniform Commercial Code 548, § 16-8 (1972 Ed.).

2. The Bank contends that Thornton, as payee on a draft which evidences an unenforceable underlying obligation, the fraudulent premium finance applications, has no standing to sue in conversion under Code Ann. § 109A-3—419. It is urged that under the circumstances, Thornton has no right of possession of the draft and that only AFCO, the drawer, can bring suit.

It is uncontroverted that the draft is a negotiable instrument which names Thornton as payee. "Where the name of the indorsee is forged, a bank which collects the check bearing such forgery and credits the proceeds to the account of the forger commits conversion and it is liable to the person who was the lawful holder prior to the forged indorsement." 2 Anderson, Uniform Commercial Code 1037, § 3-419:11 (1971 Ed.). While technically not a "holder" of the draft at the time the Bank paid over to Wyche, being a payee out of possession, it is clear that Thornton, as the named payee on an instrument drawn to its order, had property rights in the draft. "[I]f the paper is payable to the order of a named payee it is 'owned' by him and such ownership is not destroyed by the fact that the paper is stolen, the payee's name forged, and the paper then paid or cashed . . . Such act of dominion . . . constitutes a conversion of the property rights of the payee." 2 Anderson, Uniform Commercial Code 927, § 3-404:14 (1971 Ed.). "We recognize the rule that an action for conversion can be brought only by one who has title, possession, or a right to possession of the property. [Cits.] We hold that inclusion of the party as a . . . payee on the check gives him a right to possession of the check." *Trust Co. v. Refrigeration Supplies,* 241 Ga. 406, 408 (246 SE2d 282) (1978).

The draft was a contract in writing by which the drawer, AFCO, contracted with the payee, Thornton, that the bank would pay to the latter or his order the amount designated on presentation. *Mason v. Blayton,* 119 Ga. App. 203, 205 (166 SE2d 601) (1969). Can a bank which has failed to comply with the direction of the drawer to pay out to the named payee or his order but has paid out over a forged indorsement avoid liability to the named payee for conversion by demonstrating that the drawer has a defense to the enforceability of the instrument against

him by the payee? In other words, may a bank defend a conversion suit under Code Ann. § 109A-3—417 by claiming that the named payee on a negotiable instrument has no enforceable right to receive or retain the proceeds evidenced thereby against the drawer? The answer is to be found in *Trust Co. v. Refrigeration Supplies,* supra. In that case the bank had paid out over the indorsement of only one of two joint payees. The non-indorsing payee gave no consideration for his inclusion on the instrument as a payee. Thus as between the drawer and the non-indorsing payee the draft would have been unenforceable. The bank sought to avoid liability for paying out over the absent joint payee's indorsement by demonstrating this underlying unenforceability. The Supreme Court, analogizing the situation to payment over a forged indorsement for which a claim of conversion would lie, held that the bank could not plead the drawer's defense to enforceability. "Since the checks on which suit is being brought would be unenforceable by the payee against the maker, are those checks likewise unenforceable by the payee against the banks paying the checks without the payee's indorsement? . . . [W]e answer the question in the negative . . . '[I]t is the maker's exclusive privilege to designate the payees of his checks; and it is not the prerogative of one who accepts and pays it to question whether the maker had sufficient reason for doing so. However, in accepting the check, it is his duty to comply with the direction of maker to "pay the order of" the named payees . . .' [Cit.]" *Trust Co.,* supra at 407-408. Likewise, we do not believe that the Bank in the instant case may avoid liability for conversion by claiming that Thornton, as named payee on the draft, had no right to receive or retain the funds represented thereby. Fraud renders a contract voidable, not void, at the election of the injured party. Code Ann. § 20-502. Insofar as the record demonstrates, AFCO has in no way contested Thornton's right as payee on the draft to entitlement to the funds — no doubt because Thornton and Wyche have repaid the funds obtained through the underlying fraudulent transaction. Be that as it may, to all intents and purposes and insofar as the Bank's obligation on the draft is concerned, it has paid out over a

forged indorsement contrary to the drawer's direction and intent at the time AFCO drew the instrument. Thus, it has converted the instrument within the meaning of Code Ann. § 109A-3—419 (1) (c). Montgomery v. First Nat. Bank, 508 P2d 428, 431 (S. C. Or. 1973). The Uniform Commercial Code states "in absolute terms" that there is a conversion when an instrument is paid on a forged indorsement. North Carolina Nat. Bank v. McCarley & Co. 34 N. C. App. 689 (239 SE2d 583, 586) (1977).

We do not view this as placing unwarranted liability on the Bank. The general theory of the Uniform Commercial Code is to place the loss occasioned by a forged indorsement on the party who first dealt with the forger, absent negligence on the part of the drawer or payee. White & Summers, Uniform Commercial Code, § 15-1 (1972 Ed.). In the instant case, had AFCO, as drawer, suffered the ultimate loss because of the Bank's payment over a forged indorsement, AFCO could have brought suit against the drawee, arguing under Code Ann. § 109A-4—401 that the draft was not properly payable from its account. Assuming the absence of AFCO's negligence under Code Ann. § 109A-3—406 in delivering a draft made payable to Thornton into Wyche's hands (see Twellman v. Lindell Trust Co., 534 SW2d 83, 90 (Mo. Ct. of App. 1976)), the drawee would be required to recredit AFCO's account. The drawee could then, under Code Ann. § 109A-4—207 (1) (a), begin a shifting of the loss backwards toward the depository bank, in this case, the appellee-Bank. Thus, even were we to accept the argument that Thornton has no possessory interest in the draft and, therefore, could not sue for conversion, the ultimate potential liability of the Bank for paying over the forged indorsement is clear.

3. Thornton urges that because of its contractual relationship with AFCO it was required to refund money to AFCO when the premium finance applications which the draft evidenced proved fraudulent. The Bank contends that any loss Thornton suffered was because of this contractual agreement and not as the result of the payment over the forged indorsement. We do not believe that this "proximate cause" defense is available to a bank whose liability under Code Ann. § 109A-3—419 is otherwise established. See Twellman v. Lindell Trust Co.,

supra at 88-89. Furthermore, if the Bank had not converted the instrument by paying out over the forged indorsement but had paid according to the drawer's direction to Thornton's order, Thornton would not have incurred a "loss" and could simply have refunded AFCO's money. The fact that Thornton's signature does not appear on the draft does not, as the Bank contends, relieve it from liability or prevent Thornton from recovering for a loss based upon the conversion of the instrument. It is the party whose name is forged that usually suffers the loss, and if the Bank's argument were adopted no one whose name was forged on an instrument could seek recovery under the conversion provisions of Code Ann. § 109A-3—419. However, we note that the measure of the Bank's liability for the conversion is presumed to be the face amount of the instrument. Code Ann. § 109A-3—419 (2). This means that the Bank is liable for this amount unless and until evidence is introduced which would support a finding to the contrary. Code Ann. § 109A-1—201 (31). While Thornton's suit is for the full face amount of the instrument, the evidence shows that Wyche, the forger, has in fact repaid AFCO a substantial part of the proceeds he received from the converted check and Thornton has repaid the balance. Since the only loss sustained by Thornton results from its having to repay AFCO the amount represented by the fraudulent premium financing applications, it having no right to retain the proceeds of the draft itself, any amount that Wyche has refunded reduces Thornton's "loss" and thus the Bank's liability. Therefore, Thornton is entitled to recover, at most, the amount it has refunded to AFCO and the Bank is entitled to a set-off for any amounts Wyche has repaid to AFCO. Twellman v. Lindell Trust Co., supra at 96. Accordingly, at a trial on the merits, the Bank's maximum liability will be for the amount which the evidence shows was repaid by Thornton to AFCO. However, as we hold in the following division of this opinion, such a trial may result in a determination that the Bank acted in a reasonably commercial manner and, therefore, is not liable to Thornton in any amount.

4. The Bank contends that it acted in good faith and in accordance with reasonable commercial standards

applicable to the business of banking and that it would, therefore, be liable only for the amount of the proceeds of the draft remaining in its hands — in this case nothing, the Sears, Wyche & Company account into which the proceeds of the draft was deposited having been closed. Code Ann. § 109A-3—419 (3). We do not agree that summary judgment was properly entered for the Bank for this reason. In a case involving similar circumstances, *Nat. Bank of Ga. v. Refrigerated Transport Co.,* 147 Ga. App. 240, 245 (248 SE2d 496) (1978), this court held that " '[t]he indorsements were irregular enough on their face to raise some question as to their validity; and certainly when the checks were offered for deposit into the . . . account of one not the payee, [the bank] had a duty to inquire to ascertain the authority of [the depositor] to indorse and deposit [the payee's] checks. [The bank] could not escape its duty of inquiry by relying on the word of its customer, [the depositor], [Cits.]; nor does the fact that [the bank] could proceed against its customer under the warranty provisions of Ga. Code §§ 109A-3—417 and 109A-4—207 absolve it of the obligation of inquiry, [Cit.] 'Therefore, failure to inquire into the validity of the indorsements in question precluded [the Bank] from asserting the defense of commercial reasonableness of Ga. Code § 109A-3—419 (3) as a matter of law.' " It is our opinion that in the instant case there are genuine questions of material fact as to the commercial reasonableness of the Bank's payment to Wyche and that the Bank has not established this defense as a matter of law.

However, in deciding that summary judgment was not properly granted to the Bank on this issue, we emphasize that we do not hold that the Bank is precluded "as a matter of law" from asserting this defense upon trial of this case. Here, unlike the *NBG* case, the indorsement may not be so irregular on its face as to prevent assertion of this defense and there was evidence that Thornton & Company and Wyche, Sears & Company had merged and were "all one and the same agency," which may raise a genuine issue of material fact as to the Bank's duty to inquire into the authority of Wyche, a known agent of Thornton, to indorse and deposit checks payable to

Thornton into the Wyche, Sears & Company account. In short, under the facts of this case it cannot be said as a matter of law that the Bank did or did not act in a commercially reasonable manner. This issue can be resolved only by the trior of facts.

5. The Bank has not demonstrated its entitlement to judgment as a matter of law for any of the reasons urged. There remain genuine issues of fact, the resolution of which will determine whether the Bank is liable to Thornton and, if so, the amount of damages recoverable against it. Summary judgment was erroneously granted.

*Judgment reversed. Deen, C. J., and Shulman, J., concur.*

ARGUED MAY 7, 1979 — DECIDED OCTOBER 9, 1979.

*James W. Oxendine,* for appellant.
*William J. Porter, Jr., Jeffrey K. Sliz,* for appellees.

