UNITED HOME LIFE INSURANCE
COMPANY, APPELLEE, *v.*
BELLBROOK COMMUNITY BANK,
APPELLANT, ET AL.

(No. 87 CA 77—Decided
June 10, 1988.)

*Flanagan, Lieberman, Hoffman & Swaim* and *Richard Hempfling,* for appellee.

*Cox, Ginger & Root* and *Ray A. Cox,* for appellant.

WOLFF, J. United Home Life Insurance Company, Inc. ("UHL") was granted judgment, after a bench trial, against Bellbrook Community Bank in the amount of $1,200, and costs.

The bank appeals. We affirm.

The bank presents its single assignment of error as follows:

"The court erred in granting judgment to plaintiff pursuant to § 1303.55 (C) O.R.C.

"A. The judgment is not supported by law or facts herein.

"B. Defendant Appellant was a depository bank, and not the payor bank.

"C. Since the check in question was never delivered to the Appellee payee, it may not recover for conversion.

"D. Appellee failed to establish damages herein."

The uncontroverted facts in this case establish that Ben R. Grinnell was a general agent of UHL. By the terms of his contract with UHL, he was an independent contractor with "no authority * * * to endorse checks payable to [UHL]." On November 3, 1983, Grinnell established a sole proprietorship account at the bank under the name "Ben R. Grinnell-Insurance Agency." Into this account, he deposited a $1,200 check, payable to UHL and representing a premium, drawn by Florence Dietrich on the Peoples Banking Company of Lewisburg, Ohio. He endorsed the check:

"United Home Life Ins. Co.

"Ben R. Grinnell Ins. Agcy.

"Ben R. Grinnell"

Grinnell apparently appropriated the $1,200 to his own use because UHL, by its counsel's letter to the bank of January 13, 1984, demanded $1,200 from the bank.

Grinnell was no kinder to the bank. His account was overdrawn by $605.20 as of November 30, 1983 and by $273.39 as of December 20, 1983, and the bank has not recovered the deficit.

In March 1984, UHL sent its check for $1,200, representing a premium refund, to George Dietrich, Florence Dietrich's husband.

R.C. 1303.55 (A)(3) and (C) provide in pertinent part:

"(A) an instrument is converted when:

"* * *

"(3) it is paid on a forged indorsement.

"* * *

"(C) * * * [A] representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

The trial court determined that the bank had not acted in accordance with reasonable commercial standards and, accordingly, granted judgment to UHL against the bank for $1,200.

Before addressing the bank's arguments, we note that both parties have referred us to Annotation, Payee's Right of Recovery, in Conversion Under UCC § 3-419(1)(c), For Money Paid on Unauthorized Indorsement (1983), 23 A.L.R. 4th 855. Footnote 8 at 858 states:

"In apparently no reported case has a claim been successfully asserted that an indorsement which was unauthorized was not a 'forged indorsement' within the meaning of UCC § 3-419(1)(c)."

R.C. 1303.55(A)(3) is the Ohio counterpart to UCC 3-419(1)(c).

## A

The bank first argues that the judgment is not supported by the law or facts.

The gist of this contention is that UHL failed to establish that the bank did not act in accordance with reasonable commercial standards.

The problem with this contention is the bank's failure to recognize that it was the bank's burden to establish that it acted in accordance with reasonable commercial standards. See, *e.g., National Bank of Georgia* v. *Refrigerated Transport Co.* (1978), 147 Ga. App. 240, 243, 248 S.E. 2d 496, 499.

The bank's evidence as to reasonable commercial standards was presented by its cashier, Kathleen Long. We have reviewed this testimony and are satisfied that the trial court could have reasonably accorded it no weight. After testifying on cross-examination in UHL's case that the standard practice of the bank would not permit the occurrence of what happened in this case, she contradicted this testimony upon direct examination in the bank's case. Her attempt to harmonize her testimony upon further cross-examination by UHL was, to say the least, unsatisfactory.

In view of the trial court's proper determination that the bank failed to act in accordance with reasonable commercial standards, it is of no consequence that there were *no monies* remaining in Grinnell's account.

The bank also contends that UHL was "negligent in its handling of this affair." The bank does not elaborate upon this contention, and the record fails to support it.

## B

The bank next states that it was a depositary bank and not the payor bank.

While this is an accurate statement, the bank gives us no insight into its significance and we glean none from the language of R.C. 1303.55.

Under this statement, the bank

argues that UHL failed to show an unauthorized endorsement.

The bank contends that the evidence established that Grinnell had sent money to UHL by check. The bank argues that UHL thereby gave Grinnell "implied, if not expressed, authority to endorse the check."

We have previously noted that UHL's contract with Grinnell expressly stated he had no authority to *endorse checks* payable to UHL and nothing in the evidence suggests UHL deviated from this provision. UHL's agency director, Fred Schoettle, testified that UHL received checks from Grinnell and suggested that those checks represented cash payments made by UHL customers to Grinnell.

3 Ohio Jurisprudence 3d (1978) 84-85, Agency, Section 52, states:

"It is a well-recognized principle that where power is conferred upon an agent, he has by implication such incidental authority as is necessary to carry his power into effect and complete the business he is authorized to do. * * *

"* * *

"* * * However, an agent's implied authority generally embraces nothing except the powers necessary to carry into effect the purposes of the agency * * *." (Footnotes omitted.)

While Grinnell may have implied authority to deposit cash payments in his personal account to ensure safe transmittal by check of monies owed to UHL, this implied authority did not reasonably extend to endorsing and depositing checks payable to UHL, because the concern for safety of transmittal is not present where the original payment by the UHL customer is by check rather than cash.

## C

The bank next argues that it could not be liable for conversion in the absence of delivery of the check to UHL. 23 A.L.R. 4th 855, *supra*, digests cases on both sides of the issue of whether delivery of the check to the payee is a prerequisite to recovery under UCC 3-419(1)(c) and (3), of which R.C. 1303.55(A)(3) and (C) are the Ohio versions. *Id.* at 861-862, Section 3.

The cases holding delivery to be a prerequisite, including *City Natl. Bank of Miami* v. *Wernick* (Fla. App. 1979), 368 So. 2d 934, certiorari denied. (Fla. 1979), 378 So. 2d 350, cited by the bank, involve unusual facts, the likes of which are not present here. Indeed, the court in *Wernick* acknowledged the viability of recovery based on "constructive delivery" where the drawer evinces an intention to make the check an enforceable obligation by surrendering control over it and intentionally placing it under the power of the payee or of some third person for the payee's use. Although the facts in *Wernick* did not demonstrate an intention to pass title or give effect to the instrument, the facts in this case do.

Closer to the facts here are those in *Thornton & Co., Inc.* v. *Gwinnett Bank & Trust Co.* (1979), 151 Ga. App. 641, 260 S.E. 2d 765, where actual delivery to the payee did not occur. In *Thornton*, the payee's, *i.e.*, Thornton's, agent fraudulently induced the drawer to issue a draft, then forged the payee's signature. The court held that on these facts the bank honoring the check could be liable in an action for conversion. The court held that recovery for conversion required title, possession, or a right to possession, and that the drawer's designating a party as payee gives that party a right to possession. Here, Mrs. Dietrich's designation of UHL as payee gave UHL a right to possession, and to recover against the bank for conversion.

## D

We also reject the bank's argument that UHL failed to establish damages.

Grinnell deposited the Dietrich check to UHL for $1,200, representing a premium, and appropriated the money to his own use. UHL eventually refunded the $1,200 to the Dietrichs. The evidence supports the award of $1,200, and we have difficulty understanding the bank's contention to the contrary. As stated in *Thornton, supra,* at 646, 260 S.E. 2d at 769:

"* * * [T]he measure of the Bank's liability for the conversion is presumed to be the face amount of the instrument. * * * [UCC 3-419(2) (R.C. 1303.55[B].)] This means that the Bank is liable for this amount unless and until evidence is introduced which would support a finding to the contrary. * * * [UCC 1-201(31) (R.C. 1301.01(EE).]"

*Judgment affirmed.*

BROGAN and FAIN, JJ., concur.