## A91A2107. FIRST GUARANTY BANK v. NORTHWEST GEORGIA BANK.
### (417 SE2d 348)

BEASLEY, Judge.

This case presents questions concerning Article 4 of the UCC (OCGA § 11-4-101 et seq.), governing the liability of banks as between themselves arising from transactions involving non-negotiable items, as well as commercial paper or negotiable instruments which are governed by Article 3 (OCGA § 11-3-101 et seq.). The central question is whether the collecting bank or payor bank is liable for payment of a non-negotiable certificate of deposit over a forged indorsement.

*Facts*

In February of 1986, Lucille Knight was abducted from her home in Louisiana and taken to Georgia, where she was held against her will until June of 1986. In the interim, on April 1, an individual posing as Lucille Knight presented to Northwest Georgia Bank a certificate of deposit, which had been issued by First Guaranty Bank to Knight and which purported to bear Knight's indorsement. Northwest indorsed the certificate with the legend "P.E.G.," which guaranteed prior indorsements as a matter of contract, and forwarded it to First Guaranty for collection. First Guaranty redeemed the certificate and issued a money order in the amount of $33,510.59 payable to "Northwest Georgia Bank for Lucille Knight." On April 14, Northwest received the money order and negotiated it through its own indorsement but not Knight's, and after deducting a $5 service charge, issued a cashier's check payable to the order of Knight in the amount of $33,505.59. On April 17, this cashier's check was paid by Pioneer Bank, a Tennessee bank, which also indorsed it with the legend "P.E.G."

On January 30, 1987, Knight executed an affidavit that her signatures on a series of negotiable instruments were forgeries. The certificate of deposit transferred by Northwest to First Guaranty was not one of them. In the affidavit, she stated that she never indorsed or received the funds from the money order issued by First Guaranty in payment of the certificate. First Guaranty forwarded Knight's affidavit to Northwest by a letter in which First Guaranty requested that Northwest remit the proceeds of the money order to First Guaranty in that Knight's indorsement had not been obtained. It was not alleged that the indorsement on the certificate of deposit had been forged. Northwest refused the request that it reimburse First Guaranty.

Thereafter, Knight sued First Guaranty in Louisiana for paying

the certificate of deposit over a forged indorsement and testified that her indorsement on the certificate was forged. First Guaranty injected a third-party claim against Pioneer for breach of warranty in cashing a forged cashier's check, asserting that if First Guaranty were to be held liable to Knight in the Louisiana suit, Pioneer should be held liable to First Guaranty. The Louisiana suit verdict in February 1990 was in favor of Knight, and the judgment awarded her, among other things, the proceeds of the certificate of deposit paid by Northwest.

By letter from Knight's attorney in May 1989, Northwest first received notice of a forged indorsement of the certificate. By letter five months later, First Guaranty first notified Northwest of its claim against Northwest based on the forgery. Having received no satisfaction, First Guaranty brought the present action in March 1990 against Northwest based on its failure to obtain Knight's indorsement on the money order. It amended its complaint to assert claims for conversion and breach of warranty based on a forged indorsement of the certificate of deposit.

### Trial court's order and Code provisions

Noting that Knight's signature was on file with First Guaranty but not Northwest, and that First Guaranty failed to compare it with the signed indorsement, the trial court denied First Guaranty's motion for summary judgment and granted Northwest's motion for summary judgment. In an explanatory order, the court set out a statement of undisputed facts and its conclusions of law.

It held that under OCGA § 11-3-117, Northwest had authority to negotiate the money order payable to it "for Lucille Knight" without obtaining her indorsement so that Northwest is entitled to summary judgment as a matter of law with respect to the indorsement of the money order.

The trial court regarded Northwest as a "collecting bank." Under OCGA § 11-4-207 (1) (a), "[e]ach customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that: He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title." The court perceived a genuine issue of fact as to whether Knight's signature on the certificate of deposit was forged and therefore whether Northwest had good title to this item.

However, the court reasoned, this does not create a triable issue of fact in that OCGA § 11-4-207 (4) provides, "Unless a claim for breach of warranty under this Code section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in

making the claim." The court noted that First Guaranty did not notify Northwest that the indorsement on the certificate of deposit was forged until approximately two-and-one-half years after it was served with process in the Louisiana suit. It concluded that this delay was unreasonable as a matter of law and prejudicial to Northwest, since Northwest could have utilized Knight's affidavit to contradict her testimony in the Louisiana suit that her indorsement was forged. As a result, the court ruled, Northwest is discharged.

The court also applied OCGA § 11-4-207 (3): "Damages for breach of such warranties [on transfer or presentment] or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any." It recognized a $5 service charge received by Northwest as the consideration.

The court also concluded that, assuming Article 3 was applicable, Northwest was deprived of defenses available under OCGA § 11-3-419 (3) and was thereby prejudiced as a result of First Guaranty's failure to provide Northwest with notice of the forgery claim. OCGA § 11-3-419 (3) provides that a collecting bank "who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

Finally, the court stated that in making the cashier's check payable to Knight, Northwest was following First Guaranty's instructions in regard to delivery of the proceeds of the certificate of deposit and payment of the money order. It applied OCGA § 11-4-203, under which a collecting bank is not liable to prior parties for any action taken pursuant to instructions given by the collecting bank's transferor, which in this case is First Guaranty. Consequently, the trial court held that Northwest is discharged from liability under OCGA § 11-4-203.

## Appeal

1. Under Article 3 of the UCC, the drawer of a negotiable instrument has a breach-of-warranty/conversion claim against the drawee (or payor bank) for paying an instrument over a forged indorsement, although negligence on the part of the drawer may preclude him or her from recovery. See OCGA §§ 11-3-406; 11-3-407; 11-3-419. See generally 1 White & Summers, Uniform Commercial Code, 15-5, p. 754 (3d ed. 1988). If the drawer's negligence places the loss on him or her, that would end the matter. Otherwise, "[t]he general theory of the UCC [under Article 4] is to place the loss occasioned by a forged

indorsement on the party who first dealt with the forger," i.e., the collecting bank. *Thornton & Co. v. Gwinnett Bank & Trust Co.*, 151 Ga. App. 641 (1, 2) (260 SE2d 765) (1979); 7 Anderson, Uniform Commercial Code, § 4-207:15, p. 40 (3d ed. 1985); White & Summers, § 15-1, p. 744, supra. Consequently, as recognized by the trial court, the collecting bank which has accepted an item over a forged indorsement breaches its warranty of good title to the payor bank under OCGA § 11-4-207 (1) (a). While the payor bank must have paid the item in good faith in order to recoup its loss from the collecting bank, negligence on the part of the payor bank is not a defense. See *First Nat. Bank of St. Paul v. Trust Co. of Cobb County*, 510 FSupp. 651, 655 (5) (N.D. Ga. 1981); Anderson § 4-207:4, p. 32, supra.

2. The trial court did not err in concluding as a matter of law that First Guaranty did not give Northwest reasonable notice of its claim for breach of warranty in regard to the forged indorsement of the certificate of deposit, as required by OCGA § 11-4-207 (4).

While there is a paucity of Georgia case law on the question of whether notice is made within a reasonable time under OCGA § 11-4-207 (4), cases in other jurisdictions hold that a delay of even less than the approximately two-and-one-half years present in this case is unreasonable as a matter of law. See *First Nat. Bank*, 510 FSupp. at 656 (7), supra. We hold that it easily fits into this category.

3. The trial court erred in ruling that there are no triable issues on the question of the effect which First Guaranty's delay in giving notice had on the extent of liability of Northwest under OCGA § 11-4-207 (4).

(a) Contrary to the trial court's ruling, Northwest has not been prejudiced by reason of the fact that it was not afforded the opportunity to contradict Knight's testimony in the Louisiana litigation that her indorsement on the certificate of deposit was a forgery. Although First Guaranty could have impleaded Northwest in the Louisiana action, that was not mandatory. See *Suffolk Auto Liquidators v. Eastern Auto Auction*, 343 NYS2d 806, 809 (4) (Sup. Ct. 1973); Anderson, § 4-207:3, p. 32, supra. In this suit, First Guaranty bears the burden of proving that Knight's indorsement of the certificate was a forgery. Northwest may contest that claim in this case through prior inconsistent statements by Knight in her affidavit.

(b) Northwest argues that it was prejudiced because it was unable to make a demand under OCGA § 11-4-406 (5) that the payor bank assert defenses against Knight's forgery claim in the Louisiana lawsuit. However, OCGA § 11-4-406 (5) states that if the payor bank has a valid defense against a claim of a customer and waives the defense, the bank may not assert against any collecting bank a claim upon the unauthorized signature giving rise to the customer's claim.

(c) Northwest argues that it was deprived of its right to assert a

defense against Knight as the true owner of the certificate of deposit under OCGA § 11-3-419 (3), which insulates the collecting bank from conversion liability to the "true owner," who in this case is Knight. *Perini Corp. v. First Nat. Bank*, 553 F2d 398, 404 (1) (5th Cir. 1977); White & Summers, § 15-5, p. 758, supra. But, as previously stated, this is an action between the payor and collecting banks governed by Article 4.

(d) Although Northwest argues that it has been prejudiced in its ability to recover for the alleged forgery of its cashier's check and its payment by Pioneer, First Guaranty disputes this assertion, arguing that Northwest has a viable claim against Pioneer for payment of the cashier's check over a forged indorsement. First Guaranty asserted this same claim against Pioneer, but resolution of it does not appear from the record. Nor can it be determined, from the record, whether Northwest has a recoverable claim against Pioneer. Consequently, there are material issues of fact on these questions.

4. The trial court erred in interpreting OCGA § 11-4-207 (3) to provide that the only consideration received by Northwest was the $5 service charge it collected from the transaction and that Northwest's liability was limited to $5.

Again, there is a paucity of case law in this question. Anderson, § 4-207:1, pp. 28-29, supra. Official Comments 2 & 5, states that "the consideration received by the customer or collecting bank" means "the proceeds of collection." The $5 service charge is in the nature of a "finance charge" or "expense." Id. A contrary construction of OCGA § 11-4-207 (3) would mean that the collecting bank would not be liable to the payor bank under OCGA § 11-4-207 (1) (a), unless the proceeds of the instrument were retained by the collecting bank. This is contrary to the general theory of Article 4 of the UCC, which, as previously stated, is to place the loss occasioned by a forged indorsement on the collecting bank rather than the payor bank. The collecting bank may assert that it has been prejudiced by an unreasonable delay in the payor bank's giving it notice of the forgery claim, if for example it would have had an opportunity to recoup the proceeds of the instrument from the forger's account had it been given reasonable notice. See *First Nat.*, 651 FSupp. at 656 (7), supra.

5. The trial court erred in absolving Northwest from liability to First Guaranty under OCGA § 11-4-203 on the ground that in delivering the proceeds of the certificate of deposit to Knight, Northwest was acting pursuant to instructions given by First Guaranty in the money order.

First Guaranty is suing Northwest for breach of its warranty that Knight's indorsement on the certificate of deposit was genuine. First Guaranty's complaint is that on that basis, it issued the money order payable to Northwest for Knight. First Guaranty alleges that North-

west also did not comply with that instruction. It is not undisputed that Lucille Knight did receive the proceeds of the money order. The trial court erred in ruling that Northwest has a meritorious defense under OCGA § 11-4-203 as a matter of law.

*Judgment reversed. Carley, P. J., and Johnson, J., concur.*

DECIDED MARCH 3, 1992 —
RECONSIDERATION DENIED MARCH 26, 1992.

*Miller & Martin, Charles B. Lee, William S. Parrish,* for appellant.

*Clifton M. Patty, Jr.,* for appellee.