**DRUSO et al., Appellants,**

v.

**BANK ONE OF COLUMBUS et al., Appellees.**

[Cite as *Druso v. Bank One of Columbus* (1997), 124 Ohio App.3d 125.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71801.

Decided Nov. 19, 1997.

*Smith & Smith, Kenneth P. Frankel* and *Amy M. DeColibus,* for appellants.

*Ziegler, Metzger & Miller* and *Stephen M. Bales,* for appellee Bank One of Columbus.

*Brouse & McDowell, Linda B. Kersker* and *Joe Washington,* for appellee First National Bank of Ohio.

*Morganstern, MacAdams & DeVito Co., L.P.A., Stanley Morganstern* and *Timothy L. McGarry,* for appellee Morganstern, MacAdams & DeVito Co., L.P.A.

---

PORTER, Presiding Judge.

Plaintiffs-appellants Daniel Druso and Thomas Unik, Jr. appeal from summary judgment entered in favor of defendants-appellees Bank One of Columbus, First National Bank of Ohio, and Morganstern, MacAdams & Draper Co., L.P.A., on plaintiffs' claims that defendants honored a check on a forged indorsement and converted plaintiffs' interests in the check. Plaintiffs claim that summary judgment was wrongfully entered against them and should have been entered in their favor as a matter of law. We find merit to the appeal and affirm in part and reverse and remand in part for the reasons hereinafter stated.

In early 1992, Martin Sarcyk loaned Daniel Druso $20,000 for remodeling of the Brass Rail, a tavern that CWD Bar & Grille, Inc. was purchasing from Gerald Franz. CWD was owned by Druso's wife. Druso was to repay this loan to Sarcyk after the liquor license was transferred from Franz to CWD. Thomas Unik, who was financing CWD's purchase of the Brass Rail, guaranteed the repayment of the loan by Druso. When the purchase was closed, Unik was to repay Druso's debt to Sarcyk, with Druso thereafter owing Unik for both the purchase price and the remodeling costs.

On November 3, 1992, Unik delivered two checks to attorney Richard Damiani respecting the transaction. One was made payable to Sarcyk for $20,000 and one was made payable to Gerald T. Franz and Morganstern, MacAdams & Draper, L.P.A. ("Morganstern"), Franz's lawyers, in the amount of $59,500, the purchase price of the tavern. Both checks were drawn on Bank One. Damiani was representing CWD and Druso in the purchase of the tavern and the attendant loans and was acting as escrow agent. Damiani was to hold the check payable to Sarcyk until the liquor license was transferred and then deliver it to Sarcyk. Instead, Damiani forged Sarcyk's indorsement on the $20,000 check and presented it to Morganstern for payment. Morganstern deposited the check in its IOLTA account at First National and disbursed the funds to Damiani. The only documentation that Morganstern required from Damiani to disburse these funds was a handwritten explanation of the disbursement of funds, part of which was written by Pam MacAdams, and the rest by Damiani.

Morganstern presented the check for payment to its bank, First National, which in turn presented the check to the drawee bank, Bank One. Both banks paid the check over the forged indorsement of Sarcyk's signature. On or about April 3, 1993, Damiani admitted to Druso and Sarcyk that he had forged the

check, cashed it, and taken the money. In June 1993, Druso and Sarcyk notified Morganstern that the check had been forged. Sarcyk signed a forgery affidavit on August 21, 1994, which Unik forwarded to Bank One on August 26, 1994. Bank One refused to recredit Unik's account. Sarcyk assigned his claim to Druso pursuant to the following instrument:

"In consideration of the sum of $20,000.00, and other good and valuable consideration, the receipt of which is acknowledged, the undersigned, Martin J. Sarcyk, does hereby irrevocably assign all my right, title, and interest in and to a certain instrument (a copy of which is attached hereto) in any and all claims that I may have against Morganstern, MacAdams & DeVito Co., LPA and any attorney there individually; Bank One; Merrill Lynch; First National Bank of Ohio; and/or Richard Damiani as a result of the forged indorsement of the above-mentioned check written to me, dated Nov. 3, 1992 and negotiated Nov. 3, 1992 to Dan Druso.

"Dated this 21st day of August, 1996.

*Martin J. Sarcyk*
MARTIN J. SARCYK"

Both Unik and Sarcyk have promissory notes from Druso for repayment of the $20,000 to each of them.

Plaintiffs Unik and Druso filed their complaint against defendants and Damiani on November 1, 1995, to which defendants responded in due course.

The trial court granted Bank One's motion for partial summary judgment on or about May 30, 1996, denying Unik's claim against Bank One in conversion, based on the fact that "Unik cannot maintain an action for conversion under O.R.C. 1303.60(A) as revised 8/19/94." No appeal has been taken from this ruling.

Plaintiffs filed an amended complaint on May 16, 1996, with leave of court, to which defendants timely responded.

Deposition transcripts of Druso, Sarcyk, and Unik were filed on or about October 1, 1996, when defendants Bank One, Morganstern, and First National filed a motion for summary judgment. Plaintiffs filed their opposition on November 25, 1996, along with their own motion for summary judgment. Oral arguments were heard on November 29, 1996. On December 3, 1996, the trial court granted the defendants' motions for summary judgment, holding simply that there were no genuine issues of disputed fact and that defendants were entitled to judgment as a matter of law. The court denied plaintiffs' motion for leave to file their motion for summary judgment as out of rule. On December 16, 1996, a notice of voluntary dismissal of Damiani was filed by plaintiffs, and their timely notice of appeal ensued.

Plaintiffs' sole assignment of error states as follows:

"The trial court erred when it granted summary judgment to appellees, Bank One, First National and Morganstern and denied summary judgment to appellants. The law was incorrectly applied to the case at bar."

There appears to be no dispute that the defendants honored a check dated November 3, 1992, for $20,000 drawn by Unik on Bank One and payable to Martin J. Sarcyk; that Sarcyk's signature was forged by an escrow agent, Damiani; and that Damiani negotiated it by delivery to Morganstern, which deposited it with its bank, First National, which in turn presented it to Bank One, which ultimately paid on the forged endorsement. Sarcyk assigned his rights in the check to Druso. The issue before this court is whether the defendants have any liability to Unik or assignee Druso on the forged indorsement.

Under Civ.R. 56, summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 274. It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140.

However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd.* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra,* 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio modified the summary judgment standard as was applied under *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Presently, under the new standard, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those

portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Id.* at 296, 662 N.E.2d at 276.

This court reviews the lower court's granting of summary judgment *de novo.* *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination"). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

Turning first to any recredit rights that the drawer of the check, Unik, may have, we agree with the trial court that Unik's claim for Bank One's error in paying on a forged indorsement is barred by former R.C. 1304.29(F), which is applicable.

R.C. 1304.29(F) stated as follows:

"(F) An action against a bank arising out of an unauthorized signature or indorsement of the item must be brought within one year after the customer has notified the bank of his claim as required by the provisions of this section." 129 Ohio Laws 100.

In this case, the statute began to run when Unik notified Bank One about his forgery claim in July 1994. See *LaFon v. City Natl. Bank & Trust Co.* (1981), 3 Ohio App.3d 221, 223, 3 OBR 251, 253, 444 N.E.2d 448, 450. After first giving notice of the forgery claim to Bank One in July 1994, plaintiffs filed an affidavit of forged indorsement with Bank One on or about August 26, 1994. Plaintiffs Unik and Druso did not file their suit, however, until November 1995, almost three years after the check was drawn, two and one-half years after Druso and Sarcyk learned of the forgery, and one year and five months after Unik himself expressly informed Bank One of his forgery claim. Therefore, Unik's claim for recredit from Bank One is time-barred.

On appeal, as below, plaintiffs place primary emphasis on a claim of conversion by the defendants. For the reasons hereinafter stated, we find merit to this contention as to Druso's claim.

Former R.C. 1303.55(A)(3) provided that "[a]n instrument is converted when: * * * it is paid on a forged indorsement." 129 Ohio Laws 77. Former R.C. 1301.01(QQ) provided that an " '[u]nauthorized' signature or indorsement [is] one made without actual, implied, or apparent authority and includes a forgery." 144

Ohio Laws, Part IV, 6130. A conversion claim under R.C. 1303.55(A)(3) is subject to a four-year statute of limitations. R.C. 2305.09(B); *Palmer Mfg. & Supply v. BancOhio Natl. Bank* (1994), 93 Ohio App.3d 17, 21, 637 N.E.2d 386, 388–389. The parties do not dispute that Damiani forged Sarcyk's indorsement, and that the check was paid over this forgery.

■ "A bank which pays a check on a forged endorsement is liable for conversion regardless of whether the bank is a depositary or the payor bank." *United Home Life Ins. Co. v. Bellbrook Community Bank* (1988), 50 Ohio App.3d 53, 552 N.E.2d 954, paragraph two of the syllabus. See, also, *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904, paragraph two of syllabus ("An insurance company may, as drawee of a draft, be liable in conversion, pursuant to R.C. 1303.55(A)(3), when it pays the draft through its collecting bank over a forged endorsement").

■ First National, as the depositary bank, is as liable for conversion as is Bank One, the drawee bank, under R.C. 1303.55(A)(3), as both paid over the forged indorsement. Morganstern is also liable under the statute, as it accepted the forged indorsement and paid itself out of the proceeds after depositing them with its bank, First National.

The defendants raise several arguments in defense against the claims of Druso and Unik. They argue that Druso, as assignee of Sarcyk, has no standing to claim on behalf of Sarcyk because the assignment was without a valuable consideration; that Sarcyk was not a holder of the check in that he did not have actual or constructive possession of the check; that only a holder can claim conversion and therefore he assigned no meaningful rights to Druso; and that Sarcyk suffered no loss because Druso continues to owe him the $20,000 at issue. They also argue that Unik's claims for conversion fail because as the drawer of the check, Unik cannot maintain a conversion claim pursuant to R.C. 1303.55(A)(3).

■ First, as to the assignment issue, we find that defendants do not have standing to contest the consideration recited for the assignment. Although consideration is necessary as between an assignor and an assignee, "as between an assignee who has acquired legal title to the chose, and the obligee in the chose, consideration is unnecessary." 6A Corpus Juris Secundum (1975) 686, Assignments section 60. Consequently, the defendants cannot challenge the value of the consideration given. "Generally, the right to contest the validity of an assignment may be asserted only by the person who can raise the particular ground of contest in his own right." *Id.* at 707, section 71. See, also, *Ertel v. McCloskey* (1950), 167 Pa.Super. 120, 122–124, 74 A.2d 652, 654; *Quinn v. McCurdy* (Tex.Civ.App.1945), 187 S.W.2d 595, 597; *Graustein v. Boston &*

*M.R.R.* (S.Jud.Ct.Mass.1939), 304 Mass. 23, 25–27, 22 N.E.2d 594, 596. Druso therefore stands in the shoes of Sarcyk as to the defendants.

■ Even assuming *arguendo* that defendants have standing to assert that the assignment was not supported by consideration, we find consideration in the circumstances presented. Druso was obligated to repay the loan once the liquor license was transferred. The parties agreed that if Sarcyk assigned his claims to Druso, and Druso successfully recovered on the claim, Druso would pay Sarcyk in one lump sum on the balance of the note instead of continuing to make periodic installments. The parties' agreement was later memorialized in writing in the form of a promissory note dated October 21, 1995. Sarcyk's agreement to forbear collecting on Druso's obligation to repay until after the lawsuit constitutes sufficient consideration. *Mathis v. St. Alexis Hosp.* (1994), 99 Ohio App.3d 159, 163, 650 N.E.2d 141, 143–144; *Sur–Gro Plant Food Co. v. Morgan* (1985), 29 Ohio App.3d 124, 129, 29 OBR 139, 145, 504 N.E.2d 445, 450–451. Additionally, Druso had paid Sarcyk approximately $2,000 at the time the assignment was executed.

Finally, Sarcyk did not wish to expend the time or money to pursue his legal claims. Rather, he assigned his claim in consideration of Druso's bearing the initial cost of legal fees to pursue defendants.

The defendants also argue that Druso, through Sarcyk's assignment, may not recover for conversion of the check due to the fact that the check was never physically delivered to Sarcyk, *i.e.,* he was not a holder with actual or constructive possession. We find that the fact that Damiani forged the check and Morganstern deposited the check for him, with Sarcyk never having physically received the check, does not defeat Druso's conversion claim.

The court in *United Home Life Ins. Co. v. Bellbrook Community Bank* (1988), 50 Ohio App.3d 53, 55, 552 N.E.2d 954, 956–957, acknowledged that there was a split of authority on "whether delivery of the check to the payee is a prerequisite to recovery under UCC 3–419," the counterpart of R.C. 1303.55. The *United* court held that the payee could recover for conversion even though the check was never delivered to the payee "where the drawer evinces an intention to make the check an enforceable obligation by surrendering control over it and intentionally placing it under the power of the payee or some third person for the payee's use." *Id.* at 55, 552 N.E.2d at 956. *United* is analogous to the situation we have before us. Like the agent in *United,* Damiani had no authority to sign checks on behalf of the payee. The payee in *United,* like Sarcyk, never received actual delivery of the check, although the check in both cases was given to a third party for the payee's use.

■ We believe that the reasoning in *United* requires the conclusion that Sarcyk received constructive delivery because the drawer, Unik, intentionally

placed it in the possession of the escrow agent, Damiani, for Sarcyk's use upon satisfaction of the liquor license transfer. As we held in *Pippin v. Kern–Ward Bldg. Co.* (1982), 8 Ohio App.3d 196, 198, 8 OBR 266, 268, 456 N.E.2d 1235, 1237:

"The depositary under an escrow agreement is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his hands * * *.

" 'The depositary may not perform any acts with reference to the handling of the deposit, or its disposal, which are not authorized by the contract of deposit.' " Citation deleted; quoting 20 Ohio Jurisprudence 2d (1956) 215, Escrows, Section 8.

Therefore, placing the deposit in the possession of Damiani for the use of Sarcyk constituted constructive possession on Sarcyk's behalf, as Damiani had no authority to do otherwise than deliver the check to Sarcyk upon transfer of the liquor license.

Defendants' argument that Sarcyk has suffered no injury resulting from the conversion is also meritless. Sarcyk was to receive $20,000 at the time the liquor license was transferred to Druso on March 17, 1993. When the license was transferred, Sarcyk received nothing, due to the fact that defendants had paid the instrument over Damiani's forged indorsement. The time value of money dictates that $20,000 in hand at the time of the transfer was worth more than a mere promise to receive $20,000 at some unspecified time in the future.

Furthermore, the General Assembly has specified that when a check is paid over a forged indorsement, the measure of damages is the face amount of the instrument. R.C. 1303.55(B) states: "In an action against a drawee under division (A) of this section, the measure of the drawee's liability is the face amount of the instrument. In any other action under division (A) of this section, the measure of liability is presumed to be the face amount of the instrument." Thus, it is clear that Bank One, as the drawee of the instrument, is liable for the face amount of the instrument, which is $20,000 from the date of loss, *i.e.*, the transfer date of the liquor license.

With respect to the other defendants, the face amount of the check, $20,000, is likewise presumed to be the measure of damages. This measure of damages is not changed by the fact that Druso is obligated to both Sarcyk and Unik for $20,000. As Sarcyk testified, he has received only approximately $2,000, or ten percent from Druso, toward the $20,000 obligation. Druso has not even begun to repay the $20,000 obligation to Unik, as this $20,000 was included in a loan totaling $85,000. Sarcyk never received the $20,000 he was supposed to receive from Unik on this obligation.

Since we find no merit to defendants' arguments as to Druso's conversion claims, we find merit to plaintiffs' assignment of error as to Druso.

Regarding Unik's claim for conversion, we find that he has no such claim as drawer of the check. We find that his sole remedy was for a recredit pursuant to R.C. 1304.29, which, as we held above, was barred by the one-year statute of limitations. Under former R.C. 1303.55 (UCC 3–419), there was a split of authority as to whether the drawer could bring a conversion claim. We follow the better-reasoned authorities, which hold that he may not. See, *e.g.*, *Kings Premium Service Corp. v. Manufacturers Hanover Trust Co.* (1985), 115 A.D.2d 707, 708–709, 496 N.Y.S.2d 524, 526–527:

"As a general rule, the 'relation between a bank and its depositor is that of debtor and creditor, not of agent and principal. The money deposited becomes part of the bank's general funds, and it impliedly contracts to pay the depositor's checks * * * to the amount of his credit, but in discharging its implied obligation it pays its own money as a debtor, not its depositor's money as agent.' (*General Fire Assur. Co. v. State Bank*, 177 App.Div. 745, 750 * * *). Consequently, in those cases where the drawee bank charges its customer's account without authorization, as occurs when an indorsement is forged or otherwise ineffective to negotiate the instrument, the moneys paid to the depositary bank are deemed to have come from the drawee bank's own funds, and are the property of the drawee bank and not the drawer. No cause of action lies in favor of the drawer against the depositary bank in such a situation, as the depositary bank has not dealt with any valuable property of the drawer. * * * '[T]he drawer's action is against the drawee [which] has honored the check and debited the drawer's account.'" Quoting *Spielman v. Manufacturers Hanover Trust Co.* (1983), 60 N.Y.2d 221, 224, 469 N.Y.S.2d 69, 70–71, 456 N.E.2d 1192, 1193. See, also, *State of Qatar v. First Am. Bank of Virginia* (E.D.Va.1995), 880 F.Supp. 463; *Shube v. Cheng* (1993), 157 Misc.2d 255, 596 N.Y.S.2d 335; *Acrometal Cos., Inc. v. First Am. Bank of Brainerd* (Minn.App.1991), 475 N.W.2d 487; *Horovitz v. Roadworks of Great Neck, Inc.* (1990), 76 N.Y.2d 975, 563 N.Y.S.2d 735, 565 N.E.2d 484; *Brighton, Inc. v. Colonial First Natl. Bank v. Avenel Realty Co.* (1980), 176 N.J.Super. 101, 422 A.2d 433; *Underpinning & Found. Constructors, Inc. v. Chase Manhattan Bank, N.A.* (1979), 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319; *Stone & Webster Eng. Corp. v. First Natl. Bank & Trust Co. of Greenfield* (1962), 345 Mass. 1, 184 N.E.2d 358.

Since Unik's remedy is limited to the recredit of his account by the drawee, Bank One, and the statute of limitations has expired as to this remedy, he can seek no recovery against the defendants.

Given the foregoing discussion, we find that the trial court erred in entering summary judgment for the defendants on Druso's conversion claims. The

plaintiff Druso has made out a viable claim for conversion on a forged indorsement.  We remand the case for the trial court to determine the damages to which plaintiff Druso is entitled and the liabilities on the cross-claims among the defendants.

Plaintiffs' sole assignment of error is sustained in part and overruled in part.

The judgment is affirmed in part and reversed in part.  The cause is remanded in part for proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

. DYKE and ROCCO, JJ., concur.