JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Christine McMonagle granting summary judgment in favor of appellees The Hamptons and Mark IV (collectively The Hamptons) on the claims of appellants Morton and Malvene Peck arising out of injury sustained by Peck when he fell on ice on The Hamptons' property. The Pecks claim that the ice on the sidewalk was an unnatural accumulation because it formed from water that drained from a landscaped area next to the Pecks' building and, that the sidewalk was unreasonably dangerous because of a four-inch incline between the sidewalk and the driveway that violates applicable Beachwood city ordinances. The Hamptons argue that the Pecks did not present any evidence that the ice accumulated unnaturally and, additionally, that any defect in the sidewalk was open and obvious to Peck. We affirm.
On January 25, 1997, then 75-year-old Morton Peck went shopping and returned to his home at The Hamptons, an apartment complex in Beachwood, Ohio, where he and his wife had lived for four years. Peck parked his car in an adjacent lot, entered his building through the door nearest his apartment and carried the groceries to his unit. He dropped off the groceries, decided to get his mail, went downstairs and left the building to return to his car but, this time, through an exit door closer to the complex's mailroom. The concrete sidewalk from this door to the asphalt parking lot was four inches higher than the level of the lot so, to avoid a four inch drop off, the concrete was "shaved" in an effort to make a smoother transition. The result was a ramping effect, with the four-inch difference reduced over a space of approximately three inches. As Peck walked toward his car he slipped and fell on ice that was present in this area, and fractured his leg.
On January 25, 1999, the Pecks filed a complaint against The Hamptons alleging negligence in maintaining a defective sidewalk, in failing to keep its sidewalks in a safe condition, in allowing an unnatural accumulation of ice to exist on its sidewalks, in failing to protect its tenants from this danger and for violating Beachwood ordinances. The Hamptons answered and discovery was undertaken.
Peck testified in deposition that, even though he had lived at the Hamptons since November 1995, he had never noticed the decline in the sidewalk leading from that door because, although he had exited through that door on other occasions, he never used it to enter the complex and the drop-off is only noticeable to a person entering from that direction. He also stated that water drainage from a planting of bushes next to the building accumulated in the uneven area and created the icy patch on which he fell.
The Hamptons moved for summary judgment, arguing that because the ice was a natural accumulation and because the decline in the sidewalk was open and obvious, it had no duty to Peck and attached his deposition as evidence in support of its motion. The Pecks responded with affidavits from Peck and a photographer, and attached photographs of the scene to their brief. The judge granted summary judgment.
We will address, as an assignment of error, the Pecks' "Question Presented":
 WHETHER THE TRIAL COURT PROPERLY GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT?
This court reviews the grant of summary judgment de novo, applying the same standard as that applied by the trial judge. Druso v. Bank One ofColumbus (1997), 124 Ohio App.3d 125, 131. A judge may grant a motion for summary judgment pursuant to Civ.R.56(C) when the following elements are satisfied:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 369 N.E.2d 267,274; accord Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201.
The Pecks acknowledge that the Hamptons had no contractual duty to remove ice and snow and that neither the common law nor statute imposes such a duty on a landlord to remove ice and snow from common areas of an apartment complex. LaCourse v. Fleitz (1986), 28 Ohio St.3d 209, 28 OBR 294, 503 N.E.2d 159, syllabus. The Pecks, however, claim that an exception for common pathways survived the LaCourse decision, and cite a 1983 Lucas county decision, Porter v. Miller (1983), 13 Ohio App.3d 93,468 N.E.2d 134, in support. We find Porter clearly distinguishable on its facts and holding. The Porter court found that a landlord had no duty to remove natural accumulations of ice from a non-common path. In LaCourse,
the Ohio Supreme Court found that a landlord owed no duty to remove ice and snow from a sidewalk and patio step immediately in front of a common door to an apartment building. Id. On the facts of LaCourse, we find no room to carve an exception for common pathways.
The Pecks next assert that the ice was an unnatural accumulation because it resulted from drainage from an adjacent area, but present no evidence to buttress the assertion other than Peck's unsupported suppositions. He neither claimed nor demonstrated any special expertise in determining drainage paths, or in identifying drainage defects in sidewalk or parking lot construction. Therefore, even if the Pecks could legally claim that the fact of drainage or defective drainage caused an unnatural accumulation of ice, they failed to present any evidence showing that the drainage or defective drainage occurred.
The Pecks contend that the uneven area between the walk and the parking lot constitutes an unreasonable hazard pursuant to common law, and also in violation of Beachwood Ordinance 1375.11(b)(3), in that the "slope" between the walk and the parking lot was too steep. While they do not claim that such an ordinance violation constitutes per se negligence, they argue instead that the violation is evidence of The Hamptons' common law negligence in failing to correct the hazardous condition. The Pecks, however, did present evidence of a substantial unevenness sufficient to create a factual question concerning a duty to correct it. See Kimballv. Cincinnati (1953), 160 Ohio St. 370, 116 N.E.2d 708; Cash v.Cincinnati (1981), 66 Ohio St.2d 319, 20 O.O.3d 300, 421 N.E.2d 1275.
The real difficulty with this aspect of the Pecks' claim is that they have not argued that the uneven walkway was the proximate cause of Peck's injuries, but have at all times argued that an accumulation of ice caused his fall. Therefore, the issue of the uneven walkway is relevant only to the extent it shows that the accumulation of ice was unnatural. However, without more evidence (either through expert testimony or evidence so distinct that a layperson can see the unnatural accumulation without the aid of an expert) we cannot find that uneven pavement, standing alone, resulted in an unnatural accumulation of ice.
Having determined that the Pecks lacked the evidence that Mr. Peck's fall was caused by an unnatural accumulation of ice, we find no error in granting summary judgment based on the lack of a duty owed Mr. Peck by the Hamptons. We need not address whether the condition was open and obvious.
Judgment affirmed.
It is ordered that the appellees recover from appellant theirs costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., AND JAMES PORTER, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINIONS.