OPINION
Appellant Francine Carrington, Administrator of the Estate of Ridge Carrington, challenges the May 5, 1998 orders of Judge Eileen Gallagher granting summary judgment in favor of appellees Cleveland Board of Education (Board) and Deborah Port on a claim for wrongful death. She asserts that the Board and Port are not immune from liability under the facts surrounding her minor child's death, that Port's conduct was wanton or reckless. She further claims as error the granting of a motion to strike exhibits, deposition testimony and the expert's affidavit from her brief in opposition to the motions for summary judgment. For the reasons that follow, we disagree and affirm.
Ridge Carrington, born September 14, 1989, was diagnosed at birth with sickle cell anemia. As sickle cell patients are subject to overwhelming pneumococcal infections, Ridge was given immunization with Pneumovax and daily prophylactic penicillin and folic acid.
He began the first grade at Wade Park Elementary School in Cleveland at the start of the 1995-1996 school year. At that time, Carrington told Harriett Young, principal of the school, that Ridge suffered from sickle cell anemia. According to Young, Carrington did not suggest that Ridge required special attention, but did indicate that she wanted to be notified if Ridge became sick. Young relayed this information to Maureen Reiser, Ridge's first grade teacher. Although Young had some independent knowledge of the symptoms of the disease, she did not discuss this with Reiser. For the first few months of the 1995-1996 school year, Reiser taught Ridge's first grade class. In late September 1995, Reiser sent Ridge to the dispensary to see the school nurse, Sarah Berg, because Ridge suffered from a high temperature. Berg had not yet received his medical records from the school where he attended kindergarten, but she checked the instructions on Ridge's medical card, which indicated that he suffered from both sickle cell anemia and asthma, and called Carrington. The child was subsequently hospitalized for two days with reactive airway disease and fever.
At her deposition, Berg noted that lethargy was a symptom that one might expect to see in a child with sickle cell anemia, "[b]ut not necessarily just because he is going into a crisis." Because the disease destroys red blood cells faster than normal, a child suffering from the disease would not have the same energy level as a child who did not suffer from the disease. Berg said that she would notify a child's teacher of particular medical needs but, in the case of Ridge, she did not remember speaking to Reiser because Carrington had told her that she had already done so.[1]
During her deposition, Reiser stated Carrington had asked her to "keep an eye on him [Ridge]," but she did not tell her to watch for any particular symptoms. Reiser also vaguely remembered telling Young that Ridge suffered from the disease, but she did not remember when the conversation took place or why.
As a result of her own request, Reiser left Wade Park to teach a kindergarten class in November 1995, and Port was assigned to teach the first grade. On her first day teaching, Port asked Reiser whether any of the children had special concerns regarding medication or other problems. Reiser gave Port general information, indicated that Ridge suffered from sickle cell anemia and that Port should call Carrington if he did not feel well. Although Port was aware that sickle cell anemia affected the blood, she did not know nor was she told of its crisis symptoms.
At her deposition, Port stated that Ridge had been absent from school sometime before January 18, 1996, that she spoke with Carrington about his absenteeism and asked whether there was anything she needed to know about his health. Carrington explained that "there was nothing that [she] needed to know," and they discussed his homework.
On January 18, 1996, Carrington walked her children to school. Ridge had complained of "chills" but Carrington did not tell anyone at school he was not feeling well. Ridge and his brother, Ozell, arrived sometime before 8:10 a.m. Deborah Thoren, the assistant principal, stated she spoke with Ridge just outside the breakfast room and asked how he felt. Ridge told her he was tired and, when Thoren asked Ozell why Ridge was sleepy, Ozell said that Ridge and he had stayed up late the night before, playing.
Ozell walked Ridge to his classroom and, when he arrived, Ridge handed Port his home work. Port claimed she spoke with him and he told her that he was sleepy. She asked him whether he was okay, and Ridge replied he was fine. Around 10:30 a.m. she noticed that Ridge had fallen asleep at his desk and, because of the earlier conversation, did not disturb him until lunch at 10:45 a.m. Port claims to have asked him, again, whether he was alright, and he replied "yes." Ridge did not retrieve his lunch card from Port but walked across the classroom and stood in line to go to the lunch room. Port checked her classroom to be sure it was vacant, and closed and locked the door behind her.
They walked in line to the lunch room and entered. Port asked another student to give Ridge his lunch card. Although she saw Ridge get into the line, Port did not see him leave it and she did not notice whether he actually entered the lunch room. She then took three students, who had been misbehaving in line, for a short walk around the hallways for a talk before bringing them back to the lunchroom. Port did not see anyone in the hall at that time. She then went upstairs at approximately 11:20 a.m. to the faculty lounge for lunch.
When the lunch period ended at 11:50 a.m., she returned to her classroom. Tanya Alvis, another first grade teacher, explained she had found Ridge asleep on the floor outside her classroom. At her deposition, Alvis described her classroom as one which sat in a cubbyhole" away from the lunchroom. When Alvis tried to wake Ridge, he responded lazily; his eyes opened but he did not say anything. She pulled on his arm and was able to raise him to his feet. Port found Ridge with Alvis and, upon noticing that he was sick, assisted him to the office. Port described Ridge as "dazed" and walking very slowly.
Within seconds, Port, Ridge, and Alvis, arrived at the principal's office, and Robert Bernetich, a fifth grade teacher, offered his help. Bernetich lifted him onto a chair, noting that Ridge was perspiring, was not responsive, and had wet his pants. According to Bernetich, Port told him that Ridge "had been sleeping all morning and that he has sickle-cell." The principal and assistant principal were notified; Young called 911 and Carrington. Port then returned to her students who had gathered in the hallway.
After the incident, Thoren spoke with some of the children and took down their statements. Some of the children indicated that Ridge had not gone to lunch with them but remained in the room. Others indicated that he did not go to lunch, but lay down in the hall and went to sleep. One indicated that he slept all morning. According to Thoren, it was not unusual for a student to fall asleep at his or her desk.
On January 20, 1996, Ridge died due to complications from pneumococcal septicemia, multiorgan failure, severe anemia, and possible splenic sequestration.
Carrington filed suit on January 18, 1997 against the Board and Port and both answered claiming immunity under R.C. 2744 and lack of any negligence. Discovery was undertaken and later the judge ordered Carrington to provide an expert report no later than October 15, 1997.
In a letter dated October 2, 1997, Ridge's treating physician, Dr. Elizabeth H. Danish, M.D., provided the following opinion:
 It is well known that patients with sickle cell disease are predisposed to developing overwhelming fatal infections due to Strep pneumonia. It is also documented that if they receive prophylactic penicillin, the risk of overwhelming sepsis and mortality drops dramatically. However, even given adequate care, occasional patients with sickle cell disease will develop an overwhelming episode of sepsis and die within hours. It is impossible to say whether Ridge could have survived this episode of pneumococcal sepsis if he had been taken immediately for medical care; however, the delay in receiving medical care which, in this case, was in the order of four to five hours, most certainly decreased his chances of survival.
On December 1, 1997, both the Board and Port filed motions for summary judgment alleging sovereign immunity, that Port's conduct was discretionary and lack of proximate cause.
Carrington countered that Port's actions were not discretionary but wanton and reckless, that the facts of the case present an exception to immunity under R.C. 2744, and that the acts of Port delayed Ridge's treatment and decreased his chance of survival. She provided an affidavit from Dr. Danish, as part of her response to the defendants' motions for summary judgment, providing the following opinion:
 Based upon my knowledge, my review of the medical records and upon my education and experience, my opinion, based upon a reasonable degree of medical probability, is that if Ridge Carrington had received medical attention on January 18, 1996 four hours earlier than he did, he would have had a greater than fifty percent probability of surviving this episode of pneumococcal septis [sic, sepsis]
On May 4, 1998, the Board and Port filed reply briefs in support of summary judgment and a motion to strike from Carrington's brief in opposition to summary judgment certain deposition exhibits and testimony, and the Danish affidavit. They claimed the exhibits and certain deposition testimony failed to conform to the requirements of Civ.R. 56. They challenged Danish's affidavit as contradictory to her earlier report and that Carrington was willfully impeding the defenses' right to depose her expert to determine the basis for her change of position.
On May 5, 1998, the judge granted defendants' motion to strike and granted the two motions for summary judgment without opinion.
Carrington's first assignment of error states:
 I. THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR, PREJUDICIAL TO THE RIGHTS OF THE PLAINTIFF-APPELLANT, IN GRANTING DEFENDANTS'-APPELLEES' MOTIONS FOR SUMMARY JUDGMENT.
 II. THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR, PREJUDICIAL TO THE RIGHTS OF THE PLAINTIFF-APPELLANT, IN GRANTING DEFENDANTS'-APPELLEES' MOTION TO STRIKE.
Carrington argues that, even though Port knew that Ridge suffered from sickle cell anemia, she failed to do anything when she noticed that he exhibited sleepiness and lethargy which are both indicators of complications of that disease. She claims that the judge erred in concluding that Port's failure to recognize the symptoms of Ridge's illness, and allowing him to sleep for hours in the classroom, constituted negligent and/or wanton and reckless misconduct which removes Port from the aegis of governmental immunity pursuant to R.C. 2744.02 (B) (4) and R.C. 2744.03 (A) (5). In addition, because Port was not exercising judgment or discretion with respect to policy making, planning or enforcement powers as a teacher, the Board is liable for Port's negligence under R.C.2744.03 (A) (3).
The Board and Port argue that the exception espoused by Carrington and enumerated in R.C. 2744 (B) (4) does not apply to the facts of this case because Ridge's unfortunate death was not due to a physical defect associated with the building used in connection with the performance of a governmental function. Alternatively, they argue, even if that subsection did expose the Board to liability arising out of an employee's negligence, Carrington has not shown that Post had a duty to protect Ridge or that the purported four-hour delay in treatment due to Port's alleged negligence was a proximate cause of Ridge's death. Lastly, they assert, Port's judgment in her capacity as a teacher was discretionary and, thus, immunity bars any liability.
This court reviews the grant of summary judgment de novo, applying the sane standard as that applied by. Judge Gallagher.Druso v. Bank One of Columbus (1997), 124 Ohio App.3d 125, 131. A judge may grant a motion for summary judgment pursuant to Civ.R. 56 (C) when the following elements are satisfied:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,369 N.E.2d 267, 274; accord Zivich v. Mentor Soccer Club (1998),82 Ohio St.3d 367, 369-370.
Chapter 2744 of the Revised Code shields political subdivisions and their employees from civil liability for acts or omissions related to a governmental function. Sudnik v. Crimi
(1997), 117 Ohio App.3d 394, 397. The immunity provided to a political subdivision and its employees by R.C. 2744.02 (A) (1) is broad, subject to the specific exceptions enumerated under subsection (B) or as qualified under R.C. 2744.03. Wilson v. StarkCty. Dept. of Human Serv. (1994), 70 Ohio St.3d 450, 452; Sudnik,117 Ohio App.3d at 397-398. Subsection 2744.02 (B) (4), the exception that Carrington contends imposes liability on the. Board, provides:
 Political subdivisions are liable for injury or death, or loss to persons or property when that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including but not limited to, office buildings and courthouses * * * [Emphasis added.]
Pointing to Doe v. Jefferson Area Local School Dist. (1994),97 Ohio App.3d 11, 13, rendered by the Ninth District Court of Appeals, the Board and Port counter with the argument that the exception espoused by Carrington does not apply to the facts of this case. They contend that Ridge's unfortunate death must have been the result of a physical defect associated with the school building itself.
While the Ninth District might agree with the position advanced by the Board, this court has not so limited the imposition of liability provided by R.C. 2744.02 (B)(4) to only injury proximately caused by a physical defect. See Trutza v. Cleveland
(1995), 102 Ohio App.3d 371, 374-375. Therefore, because Carrington has alleged negligence on the part of Port in her acts or omissions toward Ridge while in the school, we find that the exception to immunity provided by R.C. 2744.02 (B) (4) applies to the facts of this case.
This conclusion, however, does not end our inquiry. Before considering whether R.C. 2744.03 (A) (5) provides the Board and Port with any defense to liability, we must consider whether Carrington has established a prima facie case of negligence.
It is axiomatic that in order to establish a prima facie case of negligence, Carrington must show that Port had a duty to Ridge, a breach of that duty, that injury occurred as a proximate result of that breach, and damages. E.g., Strother v. Hutchinson (1981),67 Ohio St.2d 282, 285; Bohme, Inc. v. Sprint Int'l Comm. Corp.
(1996), 115 Ohio App.3d 723, 728. Carrington concedes that Ohio law charges Port, in her capacity as a teacher, with the duty to exercise reasonable care to prevent injury when supervising her pupils.[2] "Unless school personnel assume a more specific obligation, they are bound only under the common-law duty to exercise that care necessary to avoid reasonably foreseeable injuries." Redd v. Springfield Twp. School (1993), 91 Ohio App.3d 88,92. An injury is "foreseeable" when a defendant knows or should have known that his or her act was likely to result in harm to someone. Bohme, Inc., supra at 728. While the question of whether a duty exists is generally a question of law for the court to determine, the question of whether a defendant properly discharged his duty of care is normally one for the jury to determine. Id.; Gin v. Yachanin (1991), 75 Ohio App.3d 802, 804
(the question of foreseeability is one of fact for the jury to decide). We must note that Carrington did not file a copy of her deposition transcript nor did she submit any affidavit in support of her brief in opposition to the motions for summary judgment filed by both the Board and Port. As a result, this court is constrained to consider only the deposition testimony as set forth in the facts above.[3]
Based upon the undisputed evidence, we conclude that Carrington failed to satisfy her burden of going foreword with some evidence to support the question of both proximate cause and the foreseeability of Ridge's death in relation to the symptom of lethargy he exhibited on the morning of January 16, 1998. Civ.R. 56 (E); Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Port knew that Ridge suffered from sickle cell anemia but, as Carrington acknowledges in her brief, "Port did not know of any symptoms of a child in a sickle cell crisis." Brief of Plaintiff-Appellant at 10. In addition, Berg, the school nurse, noted that lethargy was a symptom that one might expect to see in a child with sickle cell anemia, "[b]ut not necessarily just because he is going into a crisis." Thoren, the assistant principal, testified that it was not unusual for a student to fall asleep at his or her desk. According to Young, the principal, Carrington did not suggest that Ridge required special attention, but she did indicate that she wanted to be notified if Ridge became sick. The school personnel did, in fact, notify her and called 911 as soon as they discovered that Ridge was sick. After viewing the evidence in a light most favorable to the non-moving party, reasonable minds can conclude that Ridge had a better than fifty percent chance of survival had he received medical attention four hours earlier (approximately 8:00 a.m.) and that Port's omissions reduced Ridge's chances for survival.
The Ohio Supreme Court, in Roberts v. Ohio Permanente Med. Group (1996), 76 Ohio St.3d 483, 489, recognized the loss of chance exception to the strict standard of proving causation in medical malpractice actions but expressly refused to "[a]lter the principles of causation in other areas of tort law." Thus, because Carrington's theory of liability is not based upon medical malpractice, it fails for lack of proximate cause.
Moreover, if one were to accept the characterization of Port's acts or omissions as negligent, willful, wanton and reckless in either permitting a child to sleep in class or not insuring that the entire class was in the lunchroom, the law requires that injury or death, due to such conduct, be reasonably foreseeable. There is nothing in the record to support the contention that Port knew or ought to have known that a child, suffering from sickle cell anemia, who was sleeping/napping for a period of time would develop overwhelming infections due to streptococcal pneumonia and die within hours if denied immediate medical attention. It appears uncontroverted that Ridge walked out of Port's classroom at 10:45 a.m. and somehow fell asleep, unnoticed, outside the Alvis classroom near the lunchroom, a location not visible from the hallway. While this may support a claim of negligent supervision by Port, there is, however, no evidence that Ridge would have survived his illness had he received the necessary medical attention one hour earlier.
It was clear that Carrington, who was familiar with Ridge's disease, did not believe he was ill that morning despite the fact that he had complained to her of "chills" and not feeling well. She presented no evidence that Port, who had no knowledge of the disease, could reasonably foresee that by permitting Ridge to sleep at his desk she was preventing him from receiving medical attention necessary for his survival. Temple, supra, 50 Ohio St.2d at 327;Druso v. Bank One of Columbus (1997), 124 Ohio App.3d 125, 131. Therefore, because Carrington has failed to establish the requisite element(s) of a prima facie case of negligence, the judge correctly granted summary judgment in favor of both the Board and Port.
Our decision necessarily renders the rest of Carrington's arguments as moot. App.R. 12 (A) (c). We must note, however, that with regard to Carrington's second assignment of error, the judge granted the Board and Port's motion to strike in a journal entry dated the day after it was filed. While a judicial decision on matters of discovery comes within the ambit of that judge's discretion, to grant a motion to strike the day after it has been filed does not allow the non-movant an opportunity to respond in accordance with the local rules. Pursuant to Loc.R. 11 (C) of the Court of Common Pleas of Cuyahoga County, General Division, the non-moving party has at least seven days to serve and file "a brief written statement of reasons in opposition to the motion and a list of citations of authorities which are relied upon." While a judge may conclude that the non-movant will not have a meritorious response to the motion, a judge should endeavor to provide the non-movant with an opportunity to respond so the record may be preserved.
Judgment affirmed.
It is ordered that the appellees recover from appellant their costs herein taxed.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., AND TIMOTHY E. McMONAGLE, J., CONCUR.
 ____________________________ JUDGE ANNE L. KILBANE
[1] "Berg was not aware until sometime after Ridge's death that Port had taken Reiser's position as first grade teacher.
[2] Decisions from other districts which have discussed the discretionary nature of a teacher's supervision presuppose the existence of this duty. See Banchich v. Port Clinton Pub. SchoolDist. (1989), 64 Ohio App.3d 376, 378 ("[W]e find that the manner in which Banchich's teacher instructed and supervised his student's use of the power jointer was a discretionary act."); see, also,Cook v. Hubbard Village Bd. of Edn. (1996), 116 Ohio App.3d 564,571 ("The fact that the school nurse does not heed to call an ambulance every time a medical emergency arises indicates that [the teacher also] has discretion in such matters.")
[3] Assuming that the judge erred when she granted the Board and Port's motion to strike, the information contained in the evidence stricken from the record is not relevant to the issue of foreseeability of the injury.