JOURNAL ENTRY AND OPINION
{¶ 1} Karl Quickle, personally and as administrator of the estate of William Quickle, deceased, and William's mother, appeal from an order of Judge Brian J. Corrigan that granted summary judgment in favor of Kemper Insurance Company ("Kemper"), Michigan Mutual Insurance Company ("Michigan Mutual"), Zurich American Insurance Company ("Zurich"), and First Specialty Insurance Company ("First Specialty") on claims for loss of consortium and Scott-Pontzer[1] uninsured/underinsured motorist ("UM/UIM") benefits. They assert that the judge: failed to acknowledge that the "Broadened Coverage" endorsement in the Zurich policy did not alter the ambiguity in its UIM coverage, failed to find the decedent a resident relative and an insured under the Kemper policy; failed to consider Karl Quickle as an insured under both his employer's Kemper primary policy and an umbrella policy issued by First Specialty; and by finding that the Michigan Mutual policy did not provide UIM coverage in this case. We affirm in part, reverse in part and remand for additional determinations.
 {¶ 2} From the record we glean the following: On August 9, 1999, William Quickle, then seventeen years old, and son of Karl Quickle and Chantal Monet, was operating his father's motorcycle when a car, driven by Tracy L. McClough, turned left in front of him. He was ejected, and sustained fatal injuries. Ms. McClough's automobile liability carrier tendered to the estate its remaining policy limit of $293,911.22.[2]
 {¶ 3} On the date of the incident, William Quickle was employed by The Gap, Inc., the named insured under an automobile insurance policy issued by Zurich. Karl Quickle was employed by EMH Regional Care, the named insured under an automobile policy issued by Kemper, with additional umbrella coverage provided by First Specialty. Prior to his death, William Quickle was living with his paternal grandfather, Stacey Quickle, who was employed by Ford Motor Co.. Michigan Mutual had issued a policy providing commercial general liability, business auto and personal auto coverages to Ford.
 {¶ 4} The parents and estate filed a complaint against these carriers seeking damages for loss of consortium and UIM and medical payments benefits. The parents/estate and each insurer moved for summary judgment seeking to find or exclude coverage. The judge granted the motion of each insurer holding that each owed no duty to provide UIM coverage to any plaintiff. The parents/estate asserts four assignments of error set forth in Appendix A of this opinion.
 {¶ 5} We review the grant of summary judgment de novo applying the same standard of review applied by the trial judge.[3]
 THE ZURICH POLICY {¶ 6} Quickle contends that his decedent was a UIM insured under The Gap's policy and Zurich was not prejudiced by his failure to preserve its subrogation rights against the tortfeasor. We need not address whether the Zurich policy is ambiguous under Scott-Pontzer, supra, or whether Quickle violated the notice provisions of the policy because theWestfield Ins. Co. v. Galatis[4] controls our decision here. The Ohio Supreme Court has limited the application of theScott-Pontzer decision by holding that "a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment."[5] It is undisputed that William Quickle was not a named insured or on the job when he sustained his injuries/loss and, therefore, neither his estate nor his parents are insured under the Zurich policy.
 {¶ 7} The first assignment of error lacks merit.
 THE KEMPER POLICY AND FIRST SPECIALTY UMBRELLA {¶ 8} In the second and third assignments of error, Karl Quickle, as an individual and as administrator of his son's estate, asserts claims against his employer's Kemper policy for primary coverage and against First Speciality for umbrella coverage based upon his losses as a parent and for those of his son as a resident relative. The decedent son's status as a insured under his father's employer's policy is again controlled by the Galatis decision.
 {¶ 9} "Where a policy of insurance designates a corporationas a named insured, the designation of `family members' of thenamed insured as other insureds does not extend coverage to afamily member of an employee of the corporation, unless thatemployee is also a named insured."[6]
 {¶ 10} Because Karl Quickle is not a named insured under either of his employer's policies, any family member would not be a UIM insured under either. His claim under each policy as a father, however, may still be viable because the Ohio Supreme Court's assault on Scott-Pontzer is limited in nature.
{¶ 11} "Absent a specific language to the contrary, a policyof insurance that names a corporation as an insured for uninsuredor underinsured motorist coverage covers a loss sustained by anemployee of the corporation only if the loss occurs within thecourse and scope of employment."[7]
 {¶ 12} The pre-2001 version of R.C. 3937.18 did not require that an insured sustain bodily injury in order to recover damages. Under Moore v. State Auto. Mut. Ins. Co.,[8] a parent may have a viable claim for the medical expenses resulting from his minor child's injuries as well as for the loss of consortium, etc. The Galatis decision did not and could not overrule Moore in light of the language of R.C. 3937.18, nor could Galatis impose any preconditions such as requiring that an employee be operating a motor vehicle when the loss is sustained to be a UIM insured.
 {¶ 13} The record does not reveal in what capacity Karl Quickle was employed by EMH Regional Care, the named insured under the Kemper Policy, or his work schedule. William Quickle was fatally injured at 4:59 p.m. on August 9, 1999, a Monday, and Karl Quickle may have been working at that time. His loss, therefore, could have occurred within the course and scope of his employment, making him eligible for coverage under the Kemper Policy pursuant to Moore.
 {¶ 14} Galatis was limited to whether the estate of a deceased son could claim UIM coverage under a master insurance policy issued to his mother's employer but does not control the claims of a parent/employee under the employer's policy.
 {¶ 15} It was First Specialty's position that absent UIM coverage under the Kemper policy, any UIM coverage imposed by operation of law either never arose and/or would be viable only when and if the underlying coverage was exhausted. Because the judge found no UIM coverage for William Quickle under the Kemper policy — the father's claims were not discussed — he found "no duty to provide UM/UIM coverage to Plaintiffs."[9]
 {¶ 16} Although we agree, based upon Galatis, that William Quickle is not an insured under the First Specialty policy, such may not be the case for Karl Quickle's individual UIM claims. If, on remand, it is found that the father's loss occurred within the course and scope of his employment, the Kemper policy would provide the primary UIM coverage and, if exhausted, then the First Specialty UIM coverage, imposed by law, would apply.
 {¶ 17} Because, in granting summary judgment to Kemper and First Specialty, the judge did not address whether the estate/parents had compromised the subrogation interests of each carrier or otherwise caused prejudice by a delay in giving prompt notice of the claim, there is a genuine issue of material fact in dispute. Under Ferrando v. Auto-Owners Mut. Ins.,[10]
these issues must be determined. The second and third assignments of error are well taken in part.
 THE MICHIGAN MUTUAL POLICY {¶ 18} The Michigan Mutual comprehensive insurance policy provides Ford with Commercial General Liability ("CGL") coverage, Business Automobile Liability ("BA")coverage and Personal Auto Liability ("PA") coverage. Policy language promises that Michigan Mutual is to pay all sums its insured incurs because of negligence, etc. When faced with the parent/estate claims for UIM benefits, it relied upon an "Indemnity and Reimbursement Agreement" with Ford, whereby Ford agrees to pay all losses under the policies and deductible endorsements, reimburse the carrier for any loss or expense it incurs, and all investigation, settlement, adjusting, and defense expenses.
 {¶ 19} Although the decedent lived with his grandfather, Stacey Quickle, a Ford Motor Co. employee, only the estate and the decedent's parents asserted claims under Ford's Michigan Mutual policy. We need not address Michigan Mutual's contention that Ford had rejected UM/UIM coverage under both its CGL and BA policies because, under Galatis, neither parent nor the decedent is an insured for any Michigan Mutual liability insurance and, therefore, cannot be an insured for any UIM coverage. The fourth assignment of error has no merit.
 CONCLUSION {¶ 20} Only Karl Quickle, individually, could be a UIM insured under the Kemper and First Specialty policies. That portion of the judgment is reversed and remanded for a determination of whether; under Ferrando, the subrogation interests of each carrier was compromised or prejudiced, the loss Quickle sustained because of the death of his son occurred within the course and scope of his employment and, if so, the value of that loss.
 {¶ 21} Judgment reversed in part, affirmed in part and remanded.
 APPENDIX A: ASSIGNMENTS OF ERROR {¶ 22} "I. The trial court erred in granting defendant zurichamerican's motion for summary judgment by failing to considercontrolling eighth district precedent regarding the "drive othercar-broadened coverage" endorsement of the zurich policy."
 {¶ 23} "II. The trial court erred by granting defendantkemper's motion for summary judgment because (1) the decedentmust be considered the resident relative of his custodial parent,and (2) the court failed to consider the decedent's father'sstatus as an insured under his employers' policy in hisindividual capacity."
 {¶ 24} "III. The trial court erred in finding no coverageunder the first speciality umbrella policy overlaying the kemperpolicy because the first specialty policy is a "follow-form"policy."
 {¶ 25} "IV. The trial court erred in finding that michiganmutual is "self-insured in the practical sense," in failing toconsider the bankruptcy language in the michigan mutual policy,in failing to consider the separate um/uim agreement in themichigan mutual policy, and in holding that the michigan mutualpersonal auto policy does not cover plaintiffs."
It is ordered that the parties bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze Jr., J., Concurs.
 McMonagle, J., Concurs in part and Dissents in part (seeseparate opinion attached).
[1] 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116.
[2] $6,088.00 was paid to State Farm, Karl Quickle's carrier, for its subrogation claims.
[3] Buyers First Realty Inc. v. Cleveland Area Bd. ofRealtors (2000), 139 Ohio App.3d 772, 745 N.E.2d 1069, citingDruso v. Bank One of Columbus (1997), 124 Ohio App.3d 125, 131,705 N.E.2d 717.
[4] 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.
[5] Id. at syllabus 2.
[6] Id. at syllabus 3.
[7] Id. at syllabus 2.
[8] 88 Ohio St.3d 27, 2000-Ohio-264, 723 N.E.2d 97.
[9] Opinion of March 24, 2003, page 5. On page 4 he found that the minor was not a `resident relative' and, therefore, not an insured under the Kemper policy.
[10] 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927.