SOBOLEWSKI et al., Appellants,

v.

MANOIR ELECTROALLOYS CORPORATION, Appellee.

[Cite as *Sobolewski v. Manoir Electroalloys Corp.* (1997), 120 Ohio App.3d 225.]

Court of Appeals of Ohio,
Ninth District, Lorian County.

No. 96CA006490.

Decided June 11, 1997.

*Elizabeth A. Crosby, Wayne J. Belock* and *Donald G. Drinko*; and *Patrick J. Perotti*, for appellants.

*William P. Farrall* and *Richard C. Haber*, for appellee.

QUILLIN, Judge.

Plaintiffs-appellants, Jan Sobolewski, Madeline Whited, Charles Smith, and Stephen Kotai, appeal the trial court's judgment entered in favor of defendant-appellee, Manoir Electroalloys Corp. ("Manoir"), on their age discrimination claims. We affirm.

In February 1991, Manoir hired forty-six-year-old Paul Roeder to be the general manager of its Elyria plant. At that time, Roeder reported directly to Roger Hubert, the company president. Three months later, Jean Paul Plantevin arrived at the Elyria plant and was named vice-president. In his capacity as vice-president, Plantevin was responsible for the inside operations of the plant, including decisions relating to hiring and firing personnel. Roeder began reporting directly to Plantevin instead of Hubert.

In 1991, Manoir suffered financial losses totaling $820,000, and during the first month of 1992, the company lost approximately $320,000. Because of these heavy losses, Manoir's French management sent Guy Allouchery and Pierre Lefebure to Elyria in February 1992 to discuss with Roeder the cost-cutting measures that needed to be carried out at the plant. These cost-cutting measures included, among other things, a reduction in the salaried workforce. Roeder was instructed to select individuals for the proposed layoffs, but he was never told that age should be a factor. As a result, Roeder met with Twyla Gullet and Rodney Smith to discuss the matter. From these meetings, Roeder prepared a list of eighteen

employees to be considered for the reduction in force and faxed it to Allouchery in France on February 20, 1992. This list included the names of the four appellants, Jan Sobolewski, a forty-seven-year-old maintenance foreman; Madeline Whited, a fifty-five-year-old receptionist; Charles Smith, a forty-seven-year-old metallurgy technician; and Stephen Kotai, a sixty-one-year-old centrifugal foreman.

Roeder testified that the proposed layoff list changed daily, based largely upon how Plantevin perceived an individual employee's work habits. The reduction in force began on February 24, 1992 when Plantevin told Roeder that his services were no longer needed. However, Roeder does not believe that his termination had anything to do with his age. On February 27, 1992, ten more Manoir employees were permanently let go, including all four appellants.

On February 23, 1993, appellants instituted this action in the Lorain County Court of Common Pleas against Manoir, alleging in part that their terminations were the result of unlawful age discrimination in violation of R.C. 4101.17. In December 1995, a three-day bench trial was held to determine Manoir's liability under R.C. 4101.17. At trial, several former and current Manoir employees testified about Plantevin's attitude toward older employees. For instance, former employee Paul Roeder testified that several Manoir executives, including Hubert and Plantevin, often mentioned that the company needed "a younger work force" and that they "had to do something to bring in new people."

Former employee Nancy Masters, who worked as an accounts receivable manager, a sales coordinator, and a secretary and was forty-four when the layoffs occurred, testified that Plantevin "was very open about his dislike of older employees." Plantevin allegedly told Masters that if she could not do her job then "someone else younger would do it." Masters also testified that following an argument with appellant Jan Sobolewski, Plantevin remarked that Sobolewski was "a stupid man" who was "too old to do his job." According to Masters, on another occasion Plantevin commented that "in France, we, at 55 we get rid of old people."

Joseph Murray, who worked in the maintenance department at Manoir, testified about a conversation between Plantevin and Lefebure that reportedly took place two to three weeks before the layoffs. Plantevin apparently stated that "things will be better one of these days when we get rid of some of these old farts and old-timers." In addition, appellant Stephen Kotai testified that Plantevin would sometimes say to him, "How are you, old man, how are you doing?"

Appellants also introduced statistical evidence as proof of discriminatory intent. It was undisputed that ten of the eleven salaried employees laid off in February 1992 were over the age of forty. Apparently, the average age of the salaried workforce was reduced from 43.56 to 41.44 years of age.

The trial court rejected appellant's age discrimination claims. The trial court found, among other things, that (1) the testimony presented by appellants "is either not to be believed or does not constitute direct evidence of discrimination," (2) appellants "failed to offer credible circumstantial evidence of age discrimination," (3) appellants' "statistical evidence is not probative," and (4) appellants "failed to establish a prima facie case of discrimination" under R.C. 4101.17.

Appellants filed a timely notice of appeal and originally raised three assignments of error. However, at oral argument, appellants withdrew their second assignment of error.

## Assignment of Error I

"The lower court erred in determining that appellants failed to establish a *prima facie* showing of age discrimination via the direct method by misconstruing the phrase 'direct evidence of age discrimination' as used in *Kohmescher v. Kroger Co.* to include only 'evidence that proves [the] existence of a fact in issue without inference or presumption.'"

■ Appellants' age discrimination claims are based on state law. R.C. 4112.14 (formerly R.C. 4101.17) specifically prohibits an employer from discriminating against a job applicant or discharging without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job.

■ In an employment discharge action, a plaintiff-employee may establish a prima facie case of age discrimination either (1) indirectly by satisfying the four-part test as set forth in *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, paragraph one of the syllabus, or (2) directly by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory intent. *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 587, 664 N.E.2d 1272, 1279–1280. Here, appellants chose to establish their prima facie case directly by presenting evidence of age discrimination.

Initially, we shall address appellants' argument that the trial court failed to consider their circumstantial and statistical evidence of age discrimination. After reviewing the trial court's findings of fact and conclusions of law, we find that the trial court applied the appropriate rules of law in determining that appellants had failed to present evidence of discriminatory intent by Manoir. It is apparent from the record that the trial court properly weighed all the evidence (direct, circumstantial, and statistical) presented by appellants. See *Mauzy,* 75 Ohio St.3d at 583, 664 N.E.2d at 1276–1277. For instance, in its judgment entry, the trial court noted that the plaintiffs "must come forward with direct, circumstantial or statistical evidence that age was a factor in their layoff." The trial court

then went on to describe in detail why none of this evidence established a prima facie case of age discrimination on the part of Manoir.

Furthermore, the trial court defined circumstantial evidence as "the proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow, according to the common experience of mankind." Thus, contrary to what appellants have argued, the trial court did allow appellants the opportunity to raise an inference of age discrimination through the testimony of former Manoir employees.

■ In essence, appellants contend that the trial court's judgment was against the manifest weight of the evidence. It is well established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. The trial court views the witnesses and observes their demeanor, gestures and voice inflections, and thus is in the best position to assess the credibility of witnesses. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277. Therefore, every reasonable presumption must be made in favor of the trial court's judgment and findings of fact. *Id.*

In the present case, the record supports the trial court's findings that the direct and circumstantial evidence proffered by appellants was not credible and that the statistical evidence proffered by appellants had little or no probative value.

The evidence at trial consisted primarily of remarks by Plantevin and other Manoir executives as proof of Manoir's discriminatory attitude and continuing animus toward older workers. However, none of the remarks, except for the single reference to Sobolewski as a "stupid man," had any connection to appellants that could logically support the inference that the discharges were the result of discriminatory intent. See *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 129, 672 N.E.2d 145, 148–149. For instance, Roeder failed to point to a specific comment made by Plantevin or any other Manoir executive in conjunction with the selection of individuals for a reduction in force that would show bias based on age. And although Plantevin referred to Kotai as "old man," the trial court aptly noted that "[t]his comment standing alone can only be categorized as familiar greeting" and that "this comment was not made in conjunction with the termination of Kotai."

Furthermore, the trial court could reasonably find that Murray's testimony is somewhat suspect. For example, upon cross-examination Murray admitted that the Manoir executives laughed when Plantevin stated that someday they will get

rid of the "old farts." Murray further admitted that he even "snickered" at the comment because he thought Plantevin was just joking.

We should also note that the trial court's finding that the testimony of Masters lacks credibility is supported by the record. Masters, who claimed that Plantevin threatened to replace her with someone younger, was not terminated by Manoir. In fact, it was her choice to leave the company because she was overworked, even though Plantevin had asked her to stay. Furthermore, Masters's testimony regarding the isolated statement attributed to Plantevin about Sobolewski is insufficient to form the basis of appellants' claim for age discrimination, considering that it was made after the two men had been arguing. Moreover, the record shows that Masters did not mention this statement in her deposition taken only three days prior to trial. And as noted earlier, the trial court is best able to weigh the credibility of the testimony. *Seasons Coal,* 10 Ohio St.3d at 80, 10 OBR at 410–411, 461 N.E.2d at 1276–1277.

In an attempt to show that older workers were treated differently from younger workers at Manoir, appellants provided several statistics. The statistics indicate that as of February 1992, fifty-nine percent of the salaried work force at Manoir was over age forty, but ninety-one percent of those employees terminated were over age forty. Consequently, only forty-seven percent of the salaried work force was over age forty following the terminations. Appellants suggest that an inference can be made that a disproportionately large number of employees over age forty were terminated.

█ We believe the trial court could reasonably find that the statistical analysis used by appellants is flawed, and therefore does not support an inference of discriminatory intent on the part of Manoir. "For statistics to be valid and helpful in a discrimination case, 'both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.'" *Simpson v. Midland–Ross Corp.* (C.A.6,1987), 823 F.2d 937, 944, quoting *Segar v. Smith* (C.A.D.C.1984), 738 F.2d 1249, 1274. The statistics, standing alone, have little probative value because there was no information regarding all the workers terminated by Manoir, including their relative qualifications or other pertinent facts. Besides, appellants' reliance upon such a small sample is suspect. See . *id.* at 942–943. In essence, appellants failed to present any evidence that could bring their "cold numbers convincingly to life." *Teamsters v. United States* (1977), 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396, 417.

█ In a discrimination action, the plaintiff-employee must offer corroborating evidence to strengthen the probative value of the statistical evidence, especially when the evidence offered was prepared by a person with no statistical expertise and with a direct interest in the outcome of the case. See *Geller v. Markham*

(C.A.2, 1980), 635 F.2d 1027, 1033. Such evidence, expert or otherwise, was not offered by appellants.

Having carefully examined the record, we cannot say that the trial court erred in finding that appellants did not meet their burden of proving a prima facie case of age discrimination on the part of Manoir. The trial court reasonably found that appellants offered no credible, direct evidence that Manoir discriminated against them based on age. Nor did appellants cite circumstances or statistics that would lead a reasonable person to infer discrimination based on age. In such circumstances, it was appropriate for the trial court to render a decision in favor of Manoir.

### Assignment of Error III

"The lower court erred in determining that a plaintiff cannot pursue a discrimination action under R.C. § 4101.17 if he previously filed a charge with an administrative agency, in this case, the Equal Employment Opportunity Commission."

The trial court also concluded that appellants Stephen Kotai and Charles Smith could not pursue a discrimination action pursuant to R.C. 4101.17 because they had previously filed a claim with the EEOC. However, as the merits of appellants' third assignment of error have been rendered moot given our treatment of the first assignment of error, it is without merit.

*Judgment affirmed.*

DICKINSON, P.J., and BAIRD, J., concur.