JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Bridget McCafferty granting summary judgment in favor of appellee Gentek Building Products, Inc. (Gentek) dismissing appellant Patrick S. Dobozy's claims of age discrimination in employment. Dobozy contends that summary judgment was inappropriate because he presented genuine issues of material fact through direct and indirect evidence that placed into question the reasons for his discharge and for the failure to re-employ him. We disagree and affirm.
From the record we glean the following: Dobozy began his employment at Alcan, Inc. in April 1973 as an accountant and eventually obtained the position and title of accounts payable supervisor. In 1994, the Building Products Division of Alcan, Inc. was sold and taken over by Gentek and he then became an employee of Gentek with the same title and increased supervisory duties. Although his position was in accounting, Dobozy's duties in the Cleveland corporate offices were strictly limited to overseeing the accounts payable functions of Gentek's manufacturing and distribution facilities across the United States and Canada. Different accounting duties within the company were performed by the three other accountants in that department; Richard Farr, Erin Fair, and accounting manager Roger Chang.
In 1996 and 1997, Gentek experienced financial difficulty, sold or closed a number of its facilities, and, by February of 1998, retained only four hundred and forty-eight of its employees from its 1996 level of over one thousand. Dobozy aided in the sale or closings by separating the accounts payable of the affected facilities from those of Gentek's remaining divisions and facilities.
In 1997, Dobozy was relieved of his supervisory duties, either the result of an attempt to pursue a self-management style within his group, or because his subordinates had complained about him. Then, in August 1997, Gentek hired Paul Belair as its Vice President/Controller and by October 1997, Belair also became Gentek's Chief Financial Officer, consolidating positions formerly held by two executives into a single office. He began a process of restructuring Gentek's corporate offices, which he believed no longer reflected the needs of the down-sized company, and decided it was necessary to decentralize some of the accounting functions. Each Gentek facility was to perform accounting functions specific to its own operations, which would then be coordinated in the accounting department in Cleveland. Accounts payable was to be one of these decentralized functions, because Belair believed it important that each facility have the ability to assess its expenses on-site.
Belair intended to reduce the accounting department from four professionals to two, retaining the accounting manager and one accountant while eliminating the other two accountant positions in Cleveland. The sales and closings of some facilities had already reduced Dobozy's duties somewhat, although there is a disagreement as to the extent, and Belair also considered some of Dobozy's duties to be clerical work that could be handled by accounting clerks rather than by a professional accountant. Between the sales and closings and the functions redelegated to clerks, Gentek estimated Dobozy's duties were reduced by as much as 75%, while Dobozy claimed because he was given new duties including the preparation of quarterly financial statements, the net reduction of his duties was as little as 10%.
Because Chang's position as accounting manager apparently was secure, Belair testified that he preferred Farr retain the single remaining accounting position, over Dobozy and Fair. Belair was not impressed with Dobozy's work on the financial statements. He believed Dobozy had expertise in a limited area but was otherwise weak in general accounting skills, believed that Farr's general accounting experience would be superior to Dobozy's, and intended to decentralize the majority of Dobozy's current work to individual Gentek facilities.
Although denied by Chang, Belair claimed Chang told him that Dobozy had poor interpersonal skills, that he had been demoted from his supervisory position because he had lost the respect of his subordinates, and that Dobozy spent excessive time on personal business while at work. Dobozy claimed that Chang once told him that the two of them were dinosaurs with the company, that they were old employees with old ideas, and that new people with new ideas were coming in to take over. Chang admitted these remarks, but denied Dobozy's claim that he told him to be careful because the new management would look for incidents of misconduct upon which to base his discharge.
On February 2, 1998, then forty-six-year-old Dobozy was informed that his position had been eliminated, and he was discharged. Although the sequence of events is somewhat unclear, it appears that Fair, then aged twenty-nine years, submitted her resignation shortly before Dobozy was terminated, and he had inquired about her position prior to his discharge. Chang informed Dobozy that he would be taking over Fair's duties. It also appears that on February 16, 1998, Farr, then age forty-four years, who had been an independent contractor up to this point, was offered and accepted a full-time position with Gentek and took the remaining accountant position.
For his nineteen years and nine months of service, Dobozy received $50,137.50 in severance pay, paid in installments between February 1998 and December 1998. He was paid for twenty-two days of unused vacation time and was allowed to continue the company's health coverage at employee rates for eighteen months.
Farr, it appears, resigned shortly after accepting the job and, in April 1998, Gentek hired twenty-eight-year-old Mark Llewellyn to fill the position. Chang, then fifty-four years old, was re-assigned to a special projects group, and in February 1998 Gentek hired Julie Heid, age twenty-nine, to fill his position as accounting manager.
In May 1998, Dobozy filed suit in the Trumbull County Common Pleas Court against Gentek alleging age discrimination in employment, pursuant to R.C. 4112.14. The case was transferred to Cuyahoga County for venue reasons and dismissed pursuant to Civ.R. 40(A)(1) on March 1, 1999. On March 2, 1999, Dobozy re-filed his complaint alleging both that he had been discharged on the basis of age and that his application for employment had been denied because of his age. The latter claim was based on Dobozy's request to fill Fair's vacated position, and/or Gentek's failure to re-hire him after Farr's resignation, although it is undisputed that he did not actively seek employment with Gentek after Farr's resignation.
Discovery included the depositions of Dobozy, Chang, and Belair, as well as interrogatories to Gentek, which showed that between January 1995 and May 1998, fourteen of fifteen employees hired into Gentek's accounting department were under forty years old and that Farr was the only person over forty hired.
Gentek moved for summary judgment on August 3, 1999, alleging that Dobozy could not provide any evidence that his discharge was motivated by any discriminatory intent, that Gentek had a legitimate nondiscriminatory reason for his discharge and that he neither applied for any other position with Gentek nor was qualified to perform the duties of any open position. Dobozy filed his response to the motion on September 1, 1999, and the judge granted the motion on September 9, 1999.
Dobozy asserts a single assignment of error:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
This court reviews the grant of summary judgment de novo, applying the same standard as that applied by a judge. Druso v. Bank One of Columbus (1997), 124 Ohio App.3d 125, 131, 705 N.E.2d 717, 720. A judge may grant a motion for summary judgment pursuant to Civ.R.56(C) when the following elements are satisfied:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 369 N.E.2d 267, 274; accord Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201.
Dobozy claims that he submitted sufficient evidence to defeat summary judgment under both methods for proving age discrimination under R.C.4112.14 The direct evidence method, contrary to its name, can utilize either direct or circumstantial evidence to show that an employer more likely than not was motivated by discriminatory intent. Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578, 586-87, 664 N.E.2d 1272, 1279. The crux of the direct method is not the type of evidence used, but that the evidence actually proves discriminatory intent. Id. By contrast, the indirect method of proof does not require direct proof of intent, but allows a plaintiff to prevail by showing that a discriminatory effect cannot be attributed to any other cause. Id., at 583-84,664 N.E.2d at 1277; Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501, 505-06,575 N.E.2d 439, 442-43. The Kohmeschercourt set forth the elements necessary to prove a prima facie case using the indirect method:
 (1) that he or she was a member of a statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class. Id. at syllabus.
A similar analysis applies when a plaintiff claims that he applied for a job and was passed over by another applicant. R.C. 4112.14(A); Twinsburg City Schools v. Ohio Civ. Rights Comm. (1993),86 Ohio App.3d 527, 529, 621 N.E.2d 591, 593. The indirect method of proof is employed, therefore, when a plaintiff is unable to establish a direct inference of discriminatory intent via direct, circumstantial, or statistical evidence * * *. Mauzy, 75 Ohio St.3d at 584,664 N.E.2d at 1278; Kohmescher, 61 Ohio St.3d at 505, 575 N.E.2d at 442.
 Dobozy points to three pieces of evidence that he claims show direct proof of discrimination; (1) that Roger Chang told him that they were both dinosaurs with the company, that they were old employees with old ideas about to be replaced by new people; (2) that fourteen of fifteen hires into Gentek's accounting department within three years were under forty years old; and (3) that Dobozy was denied the opportunity to fill Fair's accountant position, and Gentek subsequently hired twenty-eight-year-old Mark Llewellyn. We find this evidence insufficient to create a jury question concerning Gentek's discriminatory intent.
Chang's comment that he and Dobozy were dinosaurs with the company is an isolated stray remark that cannot support a discrimination claim. Brewer v. Cleveland Bd. of Edn. (1997), 122 Ohio App.3d 378, 384,701 N.E.2d 1023, 1026-27. Dobozy has not shown any evidence that this single remark was connected with the decision to remove him, especially as the decision was made by Belair, not Chang.
Although the evidence that fourteen of fifteen persons hired into the accounting department were under forty years old is relevant, its probative value is weak, so much so that a judge would be justified in considering excluding the evidence under Evid.R. 403. The evidence offered is too generalized to be presented as statistical evidence, as there is no expert analysis or attempt to show the quality and relevance of the sample used, methods employed, or effect of other variables. Although admissible as circumstantial evidence, a judge could properly find such evidence weak when unaccompanied by other evidence or expert testimony showing its significance. Sobolewski v. Manoir Electroalloys Corp. (1997), 120 Ohio App.3d 225, 230, 697 N.E.2d 688, 692.
We note that this is not an assessment of credibility, because Gentek has not disputed that fourteen of fifteen hires were under forty years old. This is instead an assessment of the probative value of the evidence and a judge is entitled to decide that, as a matter of law, certain evidence will be insufficient to support a jury's verdict. In this case, the judge correctly decided that this evidence, standing alone, could not support a verdict in Dobozy's favor because, even if Dobozy had strengthened this evidence with a more scientific foundation, statistical evidence alone is insufficient to support a discrimination claim. Id. Corroboratingevidence must be offered, and Dobozy did not present any additional evidence that could buttress his claim.
Dobozy finally relies on the fact that he was denied the opportunity to fill Fair's position, and Gentek subsequently hired Mark Llewellyn, a twenty-eight-year-old accountant. He apparently argues that Llewellyn was hired to fill Fair's position but that is not a correct interpretation of the facts. According to Dobozy, on the morning Fair resigned, he asked for her position before he learned he was to be discharged. At that time, he was told that Chang would assume Fair's duties, and the record indicates that no one was hired to replace her. Belair had decided to keep one of the three accountants working under Chang, and his preference was Farr. Llewellyn was hired only after Farr resigned and about two months after Dobozy was terminated. Dobozy has not alleged that he requested re-employment with Gentek after Farr's resignation, and we cannot find evidence of discrimination in Gentek's failure to seek out Dobozy and offer him the job.
Each piece of Dobozy's evidence fails on its own. The hiring of Llewellyn after Farr's resignation is not at all probative of discrimination and thus fails to provide support for the other pieces of evidence. All that remains is his circumstantial evidence concerning Gentek's hiring, which is relevant but insufficient to support a finding of discrimination, and an isolated remark made by someone other than the decisionmaker, and not shown to be connected in any way with the decision to discharge him. While each piece of evidence might have provided some support for a discrimination claim based on other, stronger evidence, taken together it is only weakly probative of discrimination. We find the sum of these two bits of evidence does not create a viable inference of discriminatory intent under the direct evidence method.
Dobozy's claim also fails under the indirect evidence method for a reason already mentioned; one prong of his prima facie case requires a showing that his discharge allowed the retention or hiring of a person under forty years old, or that he applied for a position and was passed over in favor of a younger candidate. Dobozy's discharge permitted the retention of Farr, who was over forty at the time and only after Farr's resignation was Llewellyn hired to fill a position for which Dobozy was not even a candidate. He may have asked about Fair's job prior to his own discharge, but did not apply for any position with Gentek thereafter. Moreover, there is no evidence that he asked to be notified of open positions, or that Gentek agreed to consider him for future openings. Dobozy's discharge did not allow Llewellyn's hire, nor did Gentek pass over him in favor of Llewellyn. Dobozy failed to make out a prima facie case for age discrimination case and his assignment of error is without merit.
It is ordered that the appellee recover from appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________ ANNE L. KILBANE, JUDGE
JOHN T. PATTON, P.J., AND KENNETH ROCCO, J., CONCUR